Jack E. CARL et al., Appellants,

v.

Stewart L. UDALL, Secretary of the Interior, Appellee.

Nelson A. GERTTULA, Appellant,

v.

Stewart L. UDALL, Secretary of the Interior, Appellee.

Nos. 16719, 16720.

United States Court of Appeals District of Columbia Circuit.

Argued June 8, 1962.

Decided Oct. 18, 1962.

Mr. Charles F. Wheatley, Jr., Washington, D. C., with whom Messrs. Robert L. McCarty and C. Emerson Duncan, II, Washington, D. C., were on the brief, for appellants.

Mr. Hugh Nugent, Atty., Dept. of Justice, with whom Asst. Atty. Gen. Clark, Messrs. Roger P. Marquis and Ralph S. Boyd, Attys., Dept. of Justice, were on the brief, for appellee.

Before Wilbur K. Miller, Fahy and Danaher, Circuit Judges.

FAHY, Circuit Judge.

Appellants in these consolidated appeals sued in the District Court to compel the Secretary of the Interior, appellee, to issue to them patents for tracts of public lands in the State of Washington described in the margin.[1] They had selected these tracts to satisfy lieu selection rights which had accrued to their predecessors in title[2] under the Act of July 1, 1898, 30 Stat. 597, 621. By this statute Congress granted to persons whose claims conflicted with claims of the Northern Pacific Railroad Company, under grants to it by Congress, the right to select lieu lands upon transfer to other public lands of their entries which caused

1. Carl sought 31.51 acres described as Lot 5 (SE ¼NE ¼), Sec. 20, T. 6N., R.2E., W.M.; Elwert sought 40 acres described as SW ¼NW ¼, Sec. 12, T. 7N., R. 1E., W.M.; and Gerttula sought 40 acres described as NE ¼SW ¼, Sec. 5, T.3 N., R. SE., W.M., all in the State of Washington.

2. Carl applied in 1952 as substitute attorney-in-fact for Frank L. Huston; Elwert applied in 1951 as attorney-in-fact for James J. O'Keane, who had secured power-of-attorney from Jennie D. Moulton; and Gerttula applied as attorney-in-fact for Frank L. Huston, through substitute power-of-attorney for G. U. Howell.

the conflicts.[3] In proceedings in the Department of Interior which eventuated in the Secretary's decisions appellants' applications were rejected.

The bases for the Secretary's rejections are that the lands had been withdrawn from all forms of appropriation and reserved by Executive Order No. 6910, of November 26, 1934, and Executive Order No. 6964 of February 5, 1935; were subject to classification as contemplated by Section 7 of the Taylor Grazing Act of June 28, 1934, as amended June 26, 1936;[4] were of a mountainous timber character not suitable for cultivation; and were lands which in the public interest should be retained in public ownership. A reason for the latter conclusion was the existence of timber management programs in the area of the lands, which programs included the blocking up of timber lands and the institution of sustained yield practices. In view of the circumstances referred to the Secretary decided it was proper for him to refuse to classify the lands as suitable for acquisition in satisfaction of outstanding lieu selection rights. On the pleadings and other papers before the District Court, including the proceedings in the Interior Department, the court granted summary judgment in favor of the Secretary and dismissed the complaints.

In seeking reversal appellants advance three main contentions:

1. The Executive Orders left no lands available for appellants' lieu selections and accordingly were ineffective insofar as appellants' rights are concerned, citing United States v. Northern Pacific Ry. Co., 256 U.S. 51, 41 S.Ct. 439, 65 L.Ed. 825 and United States v. Northern Pacific Ry. Co., 311 U.S. 317, 330, 61 S.Ct. 264, 85 L.Ed. 210, to which we shall refer as the Forest Reserve Cases;

2. The Taylor Grazing Act does not authorize appellee to reject appellants' applications by classifying the lands as necessary to be retained in public ownership;

3. Summary judgment could not properly be awarded to appellee in the face of appellants' claim that the unfavorable classification was arbitrary.

1.

The Constitution in Article IV, Section 3, vests in Congress the "Power to dispose of and make all needful Rules and Regulations respecting the Territory or other Property belonging to the United States." The exercise of this power in a particular case, however, is subject to such rights as have accrued under Acts of Congress passed pursuant to the Constitution. The lieu selection rights of appellants arose under an Act of Congress providing that persons in their situation may in lieu of their claims in conflict with the railroad grant,

"transfer their claims to an equal quantity of public lands surveyed or unsurveyed, not mineral or *reserved*, and not valuable for stone, iron, or coal, and free from valid adverse claim, or not occupied by a settler at the time of such entry, situated in any State or Territory into which such railroad grant extends * * ." (emphasis supplied). Act of July 1, 1891, 30 Stat. 597, 621.

When appellants filed their applications the lands they sought had been reserved. Appellants counter this difficulty by relying upon the Forest Reserve Cases. The first of these, United States v. Northern Pacific Ry. Co., 256 U.S. 51, 41 S.Ct. 439, 65 L.Ed. 825, dealt with the effect of withdrawal by the United States for forest purposes of lands essential to enable the railroad company to obtain as indemnity, within "indemnity" limits prescribed by Congress, lands which had been lost to the company in the "place" limits of the congressional grants. The Court pointed out that the company, by completing the railroad con-

---

3. See Humbird v. Avery, 195 U.S. 480, 25 S.Ct. 123, 49 L.Ed. 286.

4. 48 Stat. 1272 (1934), as amended, 49 Stat. 1976 (1936), 43 U.S.C.A. § 315f (Supp.1961).

struction required by Congress, had fulfilled the obligations imposed upon it by the congressional grant and had a contractual right to the lands withdrawn, since those lands were required to meet the obligation of the Government:

"Giving effect to all that bears on the subject, we are of the opinion that after the company earned the right to receive what was intended by the grant it was not admissible for the Government to reserve or appropriate to its own uses lands in the indemnity limits required to supply losses in the place limits." 256 U.S. at 66, 41 S.Ct. at 442.

This decision is referred to in United States v. Northern Pacific Ry., 311 U.S. 317, 345, 61 S.Ct. 264, 85 L.Ed. 210 as follows:

"Under the doctrine of the Forest Reserve Case the challenged withdrawals for forest and other governmental purposes left the indemnity lands available to the company deficient to satisfy its rights of selection.

"The holding was that the withdrawals were void and the company's rights remained as if the withdrawals had never been made." And see Chapman v. Santa Fe Pac. R. R., 90 U.S.App.D.C. 34, 198 F.2d 498, cert. denied, 343 U.S. 964, 72 S.Ct. 1058, 96 L.Ed. 1361.

Aside from the factual difference due to the contractual relationship which arose between the United States and the railroad, a difference, however, upon which we do not rest our decision, the fact is the withdrawals and reservations in the present cases do not create a deficiency in lands available to appellants to satisfy their lieu selection rights. For while it is true all the available lands were originally withdrawn by the Executive Orders, the 1936 Amendment to Section 7 of the Taylor Grazing Act, enacted long before appellants filed their applications, made the lands within the withdrawals subject to classification so as to be available to satisfy such rights as appellants'. Section 7 of the Act in pertinent part provides as follows:

"The Secretary of the Interior is hereby authorized, in his discretion, to examine and classify any lands withdrawn or reserved by Executive Order of November 26, 1934 (numbered 6910), and amendments thereto, and Executive order of February 5, 1935 (numbered 6964), or within a grazing district, which are more valuable or suitable for the production of agricultural crops than for the production of native grasses and forage plants, or more valuable or suitable for any other use than for the use provided for under this chapter, or proper for acquisition in satisfaction of any outstanding lieu, exchange or script rights or land grant, and to open such lands to entry, selection, or location for disposal in accordance with such classification under applicable public-land laws * * *. Such lands shall not be subject to disposition, settlement, or occupation until after the same have been classified and opened to entry: * * * *Provided,* That upon the application of any applicant qualified to make entry, selection, or location, under the public-land laws, filed in the land office of the proper district, the Secretary of the Interior shall cause any tract to be classified, and such application, if allowed by the Secretary of the Interior, shall entitle the applicant to a preference right to enter, select, or locate such lands if opened to entry as herein provided."

The fact that the particular tracts selected by appellants have not been classified as available for lieu selections does not in and of itself create a deficiency or preclude a selection except as to these particular tracts; and appellants' rights are not rights to any particular tracts.[5] The Secretary explicitly

---

5. While it often has been said that under such a grant no right attaches to any specific land within the indemnity limits until it is selected, an examination of the

recognized in his decisions that appellants have valid outstanding rights to select acreage of public lands equal to the acreage of the lands they relinquished. He said that his refusal to approve a particular selection is not to repudiate or destroy the rights, that these continue to exist and will be permitted to be satisfied out of lands meeting statutory conditions and which, if reserved, may be restored to selection without injury to paramount public interest. We think that in these circumstances the doctrine of the Forest Reserve Cases does not apply. The withdrawals there, though originally "temporary," actually would have created a lasting deficiency. There could be no classification, as there can be here, which would leave ample land available to satisfy the selection rights.

### 2.

We are unable to agree that the Taylor Grazing Act does not grant authority to the Secretary to classify the lands sought by appellants so as "to retain [them] in public ownership" in connection with the timber programs to which the Secretary referred. Section 7, quoted supra, provides that if the lands are more valuable or suitable for the production of agricultural crops than for grazing purposes, "or more valuable or suitable for any other use" than for grazing, "or proper for acquisition in satisfaction of any outstanding lieu * * * rights" they may be classified for such use. Appellants contend that if proper for acquisition or satisfaction of outstanding lieu rights the land must be so classified, or, in any event, so classified

if more valuable for that use than for grazing; and that in determining this question the Secretary is bound by the language of the 1898 Act that land is proper for lieu selection unless "not mineral" or "not valuable for stone, iron, or coal," and is free from valid adverse claim or unoccupied. Appellants point out that the lands they seek meet these conditions. The contention has some plausibility. But we think basically, the problem is one of proper classification of the lands and Congress so recognized; the language "any other use" creates a distinct and separate category which may include lands otherwise proper for lieu selection, as appellants would define the latter. This is reasonably clear from the ordinary meaning of the language, is more consistent with the conservation purposes of the Taylor Grazing Act, and conforms with its long administrative interpretation. Thus, in an earlier Gerttula case,[6] decided in 1941, the Secretary ruled:

"* * * power to withhold from improper disposition and unwise uses is essential to the national policy of conservation of the rapidly diminishing public domain and its natural resources. This policy is implemented in large part by the Taylor Grazing Act, in particular by the classification provisions of section 7 and the two Executive orders[1] [No. 6910, dated November 26, 1934, and No. 6964, dated February 5, 1935.] mentioned therein, which withdraw and reserve the lands pending determination of their highest usefulness

cases will show that this general rule never has been applied as between the Government and the grantee where the lands available for indemnity were not sufficient for the purpose. Its only application has been where either the rights of settlers were involved, or the lands available for indemnity exceeded the losses, thereby making it essential that there be a selection and identification of the particular lands sought to be taken. 256 U.S. at 65, 41 S.Ct. at 442, Mr. Justice Van Devanter writing for the Court. Cf. Weyerhauser v. Hoyt, 219

U.S. 380, 31 S.Ct. 300, 55 L.Ed. 258; So. Pac. R. R. v. Bell, 183 U.S. 675, 22 S.Ct. 232, 46 L.Ed. 383; United States v. Colton Marble & Lime Co., 146 U.S. 615, 13 S.Ct. 163, 36 L.Ed. 1104, and United States v. Mo., Kan. & Tex. Ry., 141 U.S. 358, 12 S.Ct. 13, 35 L.Ed. 766.

6. Department of the Interior, Nelson A. Gerttula, Substitute-attorney-in-fact for W. E. Howell, attorney-in-fact for Frank L. Huston, Spokane 018338, Appeal from the General Land Office (A. 23158; Dec. 31, 1941).

by the Secretary in his discretion. * * * When therefore the Secretary finds that lands sought by a particular application are affected by an interest of the people as a whole and that the classification requested by an individual applicant would injure that interest and be inconsistent with the purposes to further which the lands have been reserved, the Secretary has not merely the power but the duty to maintain the reservation and to refuse to release the lands from it for the disposal desired."

Our foregoing discussion disposes of appellants' contentions based on the Forest Reserve Cases and the Secretary's authority under Section 7. Aside from the additional question whether the cases were in a posture for summary judgment, to be discussed below, appellants in their pleadings and main brief in this court raise no other contentions. In their reply brief in this court, however, it is said that the reasoning of the Forest Reserve rule is that the selection right is a valuable property right within the protection of the due process clause of the Constitution; that is, "the rule precludes this result [the wiping out of valuable property rights] by voiding the withdrawal to the extent that it leaves insufficient lands available for the satisfaction of outstanding rights of selection." Since, as already pointed out, no such deficiency here exists when the withdrawals are considered with the classification responsibility placed upon the Secretary by Section 7 of the Taylor Grazing Act, the reasoning thus attributed by appellants to the Forest Reserve rule is not applicable to our cases. Appellants suggest no other constitutional question, and we accordingly decide none. We may add, nevertheless, that absent such a situation as led to the Forest Reserve rule, in which the deficiency created by the withdrawal was critical, a disposition of the cases favorable to appellants on constitutional grounds would present formidable obstacles. In pressing a claim, for example, that there has been a denial of due process of law appellants would be urging the unreasonableness, in relation to their rights, of national conservation programs initiated and continued over a period of many years, notwithstanding that the creation of their own rights left the nature of such rights not clearly defined and notwithstanding also the passage of half a century after their creation before appellants sought to exercise their rights.

3.

■■ Appellants themselves, as well as appellee, moved for summary judgment. Appellants explicitly took the position in their motions that there was no genuine issue of material fact, even with respect to their claim of arbitrary rejection by the Secretary of their applications. In this situation the questions were proper for decision by the court as questions of law, including whether the data before the court made out a case of arbitrariness. We think they did not.

Although appellants' complaints in the District Court contained the usual general prayer for "such other and further relief as is just and equitable," they pitched their cases on a claim of right to the particular tracts and not to some other relief. The pleadings and record were not prepared as a basis for alternative relief on the theory the Government had acted or failed to act so as entirely, or inequitably, to frustrate any lieu selections whatever by appellants, by failure to classify any lands for that purpose, or otherwise. Since appellants are not entitled to the relief they seek, namely, the desired patents to the particular tracts, we do not go further than to hold they are not entitled to a decree that such patents should issue to them.

The views above expressed are dispositive of the cases, so that it is unnecessary to consider other contentions.

Affirmed.