**John L. RICHARDSON, Plaintiff,**

v.

**Stewart L. UDALL, Secretary of the Interior of the United States, Defendant.**

**No. 3975.**

United States District Court
D. Idaho, S. D.
April 4, 1966.

Brauner, Fuller & Doolittle, Caldwell, Idaho, Wayne P. Fuller, Caldwell, Idaho, for plaintiff.

Sylvan A. Jeppesen, U. S. Atty., Robert E. Bakes (former Asst. U. S. Atty.), Boise, Idaho, for defendant.

McNICHOLS, District Judge.

The plaintiff, Richardson, by his Amended Complaint, seeks review of a final decision of the Secretary of the Interior rejecting his homestead application on certain public lands administered by the Secretary pursuant to the Taylor Grazing Act: [1]

---

1. 43 U.S.C.A. § 315, "In order to promote the highest use of the public lands pending its final disposal, the Secretary of the Interior is authorized, in his discretion, by order to establish grazing districts or additions thereto and/or to modify the boundaries thereof, of vacant, unappropriated and unreserved lands from any part of the public domain of the United States (exclusive of Alaska), which are not in national forests, national parks and monuments, Indian reservations, revested Oregon and California Railroad grant lands, or revested Coos Bay Wagon Road grant lands, and which in his opinion are chiefly valuable for grazing and raising forage crops: * * *."

§ 315a. "The Secretary of the Interior shall make provision for the protection, administration, regulation, and improvement of such grazing districts as may be created under the authority of section 315 of this title, and he shall make such rules and regulations and establish such service, enter into such cooperative agreements, and do any and all things necessary to accomplish the purposes of this chapter and to insure the objects of such grazing districts, * * *."

The decision of the Secretary comes within the purview of the Administrative Procedure Act:[2]

It is therefore subject to judicial review by the Court. The limits of such review are set forth in Subsection (e) of this Act.

Defendant, as a part of his supplemental Motion for Summary Judgment, filed with the Court the complete record of administrative proceedings had heretofore by the plaintiff before the Department of the Interior. Based upon that record, as well as the pleadings and other exhibits on file, plaintiff filed a Cross Motion for Summary Judgment.

The issues thus being joined, a judicial review of the administrative record is required in determination of the Motions for Summary Judgment.

That record discloses that on January 23, 1961, the plaintiff filed a homestead entry with the Land Office, Bureau of Land Management, Department of Interior at Boise, Idaho. The land applied for was described as Lots 1, 2, 3 and 4, Section 1, Township 1 North, Range 3 West, Boise Meridian, located in Canyon County, Idaho, hereinafter referred to as "Parcel No. 1". Said lands were lands withdrawn and reserved by Executive Order No. 6910 dated November 26, 1934 and amendments thereto. Said lands were subsequently included within the Boise Grazing District, which was established pursuant to the provisions of the Act of Congress dated June 28, 1934, Chapter 865, 48 Stat. 1269, 43 U.S.C.A. § 315 et seq.

Plaintiff on February 7, 1961 was requested by the local Land Office to furnish evidence of water right and a map showing a proposed plan of irrigation for the land applied for which plaintiff submitted. The Land Office acknowledged receipt of the requested additional information by letter dated March 14, 1961. This letter also advised the plaintiff that his application would be subject to further processing; that there might be some delay before final action was taken on the application, and that he would be notified of its acceptance or rejection. Plaintiff was also advised that he might be called upon to take further steps to perfect his application. Apparently plaintiff's application was sufficient as he was not called upon to take further steps to perfect it.

On April 24, 1961, a field examination was made of the land here in dispute as well as other tracts in the same area upon which applications had been filed. Quoting from the field examiner's notes with regard to the land in question "Parcel No. 1", he found:

"All the subject lands are suitable for agricultural use from the standpoint of soils and topography. *Parcel No. 1 is of exceptional good quality.*" (Emphasis added.)

The report further found that:

"There have been numerous wells drilled in the area, most of which have been successful to some degree. The prospects for obtaining underground water for irrigation appear to be reasonably good."

Summarizing some of the other data of the field examiner on "Parcel No. 1", he found that the type of crops grown in the area provide a high return to the land; that the land is nonmineral in character; it contains no timber; that it is of no value to the grazing program and no intensive use factors were apparent. Adversely, the field examiner found that prior entries allowed on "Tract No. 1" had proved unsuccessful but that:

2. 5 U.S.C.A. § 1009. "Judicial review of agency action.
"Except so far as (1) statutes preclude judicial review or (2) agency action is by law committed to agency discretion.
"*Rights of Review.* (a) Any persons suffering legal wrong because of any agency action, or adversely affected or aggrieved by such action within the meaning of any relevant statute, shall be entitled to judicial review thereof.
" * * *
"*Acts reviewable.* (c) Every agency action made reviewable by statute and every final agency action for which there is no other adequate remedy in any court shall be subject to judicial review. * * *"

"The reason for failure to develop the subject lands under former entries is not readily apparent." The field report notes that the subject tract, "Parcel No. 1", is of no value to the Bureau of Land Management and should be disposed of. Further, that prior filings on the subject lands in the past several years have caused the government additional bookkeeping.

The conclusions of the field examiner, filed with the Local Land Office on July 26, 1961, reiterate his finding that "Parcel No. 1" is suitable for agricultural use and that sufficient water is available for such purpose. Additionally, this report concludes that "Parcel No. 1" has been subject to prior entries which have proven unsuccessful and that such prior entries have resulted in a great deal of record-keeping and adjudicative work on the part of the Land Office. The report then notes that: "There is no assurance that subsequent entries allowed on the basis of the present applications would result in successful developments." The Court here notes that plaintiff has never been afforded the opportunity by defendant to make a showing that his application would result in successful developments. The report concludes that "Parcel No. 1" should not be disposed of under the Desert Land Act or the Homestead Act; that the agency is not obligated to classify said lands under the aforesaid acts, and that the public interest would best be served by disposal at public sale.

On August 4, 1961, a Classification Statement was filed with the local Land Office classifying "Parcel No. 1" as more valuable for disposal by public sale than disposal under the Desert Land Act or the Homestead Act. The narrative on the reverse side of the Classification Statement in part states: "The previous entries and applications have resulted in a great deal of record keeping and adjudicative work. There is no assurance that subsequent entries allowed on the basis of the present applications would result in successful developments. The

same pattern as has occurred in the past very well could continue."

By decision of the Acting Manager of the Land Office dated August 25, 1961, the plaintiff was notified that his application was rejected. Said decision states in part that: "These previous entries and applications have resulted in a great deal of record keeping and adjudicative work; however, no tangible agricultural development was accomplished. There is no assurance that allowance of the subject applications would result in successful developments." Quoting further from the decision: "Under the present Public Land Conservation policy the government must receive a full return for its property in terms of money or other values. It has been determined that the lands should be disposed of through public auction rather than the unappropriate Desert Land and Homestead Laws."

Plaintiff was advised that the decision would become final thirty days from its receipt unless an appeal was taken to the Director of the Bureau of Land Management. Plaintiff was further advised of the requirements of taking an appeal and the cost thereof.

On September 11, 1961, plaintiff filed his Notice of Appeal with the local Land Office, together with the filing fee for an appeal.

The local Land Office on September 14, 1961 acknowledged receipt of the Notice of Appeal and again advised plaintiff of the requirements contained in 43 C.F.R. 221.3 [C.F.R. 1842.5-1] respecting the filing of a statement of reasons for the appeal. Said statement was filed by the plaintiff with the local Land Office on October 12, 1961 and was received by the Appeals Office in Washington, D. C. on October 17, 1961.

Plaintiff's application was denied in a decision dated December 5, 1961 by the Director of the Bureau of Land Management, affirming the decision of the local Land Office Manager. This decision, after recitation of the reasons for the rejection of the application at the local level, states: "A review of the records and statements involved reveals that the

appellants have not presented any positive or substantial evidence that the classification action taken is in error. The department has consistently and repeatedly held that a classification adverse to an applicant for public lands will not be disturbed in the absence of positive evidence of error in the classification." As previously noted by the Court, plaintiff was afforded no opportunity to provide such proof. Additionally, the Court notes that a change of policy relative to filing on public lands was announced by the Secretary of the Interior by notice in the Federal Register, dated February 14, 1961. Said policy change as it pertains to this suit provides in sum that when an application is rejected, the applicant must submit on appeal, "positive and substantial evidence that the classification is in error." Yet, plaintiff was never advised of this requirement. The forms furnished plaintiff by defendant (Form 4–1364 [September, 1959] and 4–1365 [April, 1958]) by the local Land Office and the Director's Office, relative to appeal merely require that the appellant state his reasons for appeal.

Plaintiff filed timely Notice of Appeal from the decision of the Director to the Secretary of Interior on December 5, 1961.

Some two years later, January 8, 1964, the Secretary of Interior affirmed the decision of the Director of the Bureau of Land Management in a perfunctory fashion. This decision in part states: "for the reason that the land applied for has been in previous entries or applications without tangible agricultural development, and it has been determined that the land should be disposed of at public auction."

Plaintiff, by letter dated February 14, 1964, requested the Secretary to reconsider his decision and submitted a series of affidavits and a land use appraisal for the Secretary's consideration. Said affidavits and land use appraisal appear to make out a prima facie showing; that the subject land could be economically developed by plaintiff as irrigated agricultural row crop land. The above-referred to land appraisal which plaintiff submitted to the Secretary was obtained July 30, 1962 while plaintiff's appeal was pending before the Secretary, apparently to be used as a basis for any evidentiary hearing that might have been held.

In his reply of March 6, 1964 to plaintiff's request for reconsideration of the rejection of his application, the Secretary specifically notes that he does not question the suitability of the land in question for agricultural purposes. Then, and this was the first time the point was raised in the administrative proceedings, the Secretary suggests that the government may need the subject land for a reclamation project. He concludes that if the land is not so needed, then it will be sold at public auction.

The plaintiff, having exhausted all of his administrative remedies, made timely appeal to this court.

The effect of the decision of the Secretary was, in short, to classify the subject land for sale by public auction. This decision was based on a history of unsuccessful agricultural development by prior applicants on the same parcel. Great weight was attached to the record of repeated applications for entry and the failure to prove up on the same which increased the record keeping and adjudicative function of the defendant, resulting in an increase in work for the agency. Lack of assurance that the plaintiff-applicant would be successful if permitted entry on the subject land was strongly relied on as a basis for the decision.

The defendant admits that the subject land was open to entry under the Homestead Act at the time plaintiff filed his application; that the Taylor Grazing Act [3] is here controlling, and that upon

3. 43 U.S.C.A. § 315f. "The Secretary of the Interior is hereby authorized, in his discretion, to examine and classify any lands withdrawn or reserved by Executive order of November 26, 1934 (numbered 6910), and amendments thereto, and Executive order of February 5, 1935 (numbered 6964), or within a grazing district,

application for entry, the Secretary was required to classify the lands.

The construction placed upon 43 U.S.C.A. § 315f by defendant finds the discretion granted to the Secretary by the statute in disposing of public lands to be absolute. That is, the Secretary is not bound by the classifications set forth in the statute itself but may take advantage of other statutory provisions in disposing of such land.[4]

Plaintiff urges that upon the filing of an application for entry on Taylor Grazing lands, the Secretary's discretion is limited to a classification of the subject land according to the categories set forth in the statute itself and sale by public auction is not contemplated in the classifications set forth in 43 U.S.C.A. § 315f.

The question for this Court in resolving the instant dispute is whether as a matter of law the Secretary properly interpreted and applied the controlling statute in reaching his decision. The Court finds that he did not. As far as the Court is able to determine, the precise issue presented by this appeal has never been ruled upon by the Courts. That is, the scope of discretion vested in the Secretary by 43 U.S.C.A. 315f in classifying lands within a grazing district which are open to entry under applicable public land statutes.

The Taylor Grazing Act, 43 U.S.C.A. § 315 et seq., was enacted into law by the Congress in 1934. With the exception of a few amendments not here pertinent, the language of the Act and its objectives remain unchanged today. Section 315, which sets forth the purpose of the Act and the rights and limitations thereunder, in part, reads:

" *  *  * Nothing in this chapter shall be construed in any way to diminish, restrict, or impair any right which has been heretofore or may be hereafter initiated under existing law validly affecting the public lands, and which is maintained pursuant to such law except as otherwise expressly provided in this chapter,  *  *  *."

At the time the Act was under consideration by Congress as a legislative proposal, concern was expressed that passage of the legislation would result in a foreclosure of further homesteading on the public domain. The Department of Interior during the course of Congressional hearings on the measure stated that the homestead laws were to remain in effect. Quoting from the testimony of Assistant Solicitor Poole, before the Senate Committee on Public Lands and Surveys:

"However, it should be borne in mind that the homestead laws remain in full force and effect as to all scattered or isolated tracts not placed within a grazing district, and it is in these areas in which these tracts are located where the land best suited for homestead purposes lie(s). The more compact areas which will be placed in grazing districts have remained so because they have not been sought after by homesteaders under any of the

---

which are more valuable or suitable for the production of agricultural crops than for the production of native grasses and forage plants, or more valuable or suitable for any other use than for the use provided for under this chapter, or proper for acquisition in satisfaction of any outstanding lien, exchange or script rights or land grant, and to open such lands to entry, selection, or location for disposal in accordance with such classification under applicable public-land laws, except that homestead entries shall not be allowed for tracts exceeding three hundred and twenty acres in area. Such lands shall not be subject to disposition, settlement, or occupation until after the same

have been classified and opened to entry: * * * *Provided*, That upon the application of any applicant qualified to make entry, selection, or location, under the public-land laws, filed in the land office of the proper district, the Secretary of the Interior shall cause any tract to be classified, and such application, if allowed by the Secretary of the Interior, shall entitle the applicant to a preference right to enter, select, or locate such lands if opened to entry as herein provided."

4. Here the land is to be sold by virtue of 43 U.S.C.A. § 1171, "The Isolated Tracts Act".

public land laws. Even as to land situated within the grazing district, your attention is called to the fact that where they are more valuable for agricultural purposes than grazing, the homestead laws continue in operation." (H.D. 241 at page 86, 1934)

Certainly one of the rights mentioned in the quoted language from Section 315 was that of homesteading. Such right existed on the public domain prior to the passage of the Act and it was the intent of Congress that it should continue thereafter where the land in question was more valuable for agricultural purposes. The subject language was included in the Act by amendment of the House bill.

The continued importance of the homestead right in the face of the proposed legislation establishing grazing districts may be seen from the Congressional Record of the Senate during debate on this legislation. Thus at page 11144 of the Record for June 12, 1934:

"In order to make certain that lands should not be improperly classified to cut off the right of homesteading, a mandatory amendment was adopted requiring the Secretary to classify any tract not exceeding 320 acres in area for which any qualified entryman should make application and providing that the filing of the application should entitle the applicant to a preference right to enter the lands in the event that they should be open to entry." [5]

Continuing at page 11155 of the Record of the same date:

"Section 7. Mr. President, provides generally that lands which are chiefly valuable for agriculture may be so classified by the Secretary and may be thrown open to entry and settlement under the homestead laws. Those are the general provisions of that section and under these provisions it is stated that lands which are chiefly valuable

for agriculture may yet be subject to homestead entry. The section of the bill which provides that lands in a grazing district on the public domain shall automatically be withdrawn from settlement will not apply but the Secretary of the Interior will have the right and the authority to classify the lands chiefly valuable for agriculture and permit their entry and settlement as such."

The language of the statute itself [43 U.S.C.A. § 315f] seems susceptible of only one interpretation. Initially the discretion vested in the Secretary is complete and not subject to judicial interference. The statute in part reads:

"The Secretary of the Interior is hereby authorized, in his discretion, to examine and classify any lands withdrawn or reserved by Executive order of November 26, 1934 (numbered 6910), and amendments thereto, and Executive order of February 5, 1935 (numbered 6964), or within a grazing district, which are more valuable or suitable for the production of agricultural crops than for the production of native grasses and forage plants, or more valuable or suitable for any other use than for the use provided for under this chapter, or proper for acquisition in satisfaction of any outstanding lien, exchange or script rights or land grant, and to open such lands to entry, selection, or location for disposal in accordance with such classification under applicable public-land laws * * *."

■■ Under the foregoing language, the Secretary may or may not choose to examine and classify such lands. No application need be filed in order for the Secretary to act. (See C.F.R. 2410.02). If he chooses to act, he has at his disposal a variety of statutory methods in dealing with the land. As the defendant suggests in his supplemental brief in support of his Motion for Summary Judgment, and the Court concedes, he

5. (Presently the language in part of 43 U.S.C.A. § 315f here controlling.)

may classify the land under one of the categories set forth in 43 U.S.C.A. § 315 f itself or take advantage of other statutory methods of disposing of it. Thus, he may sell it under 43 U.S.C.A. § 1171, or 43 U.S.C.A. § 682a, withdraw it for reclamation purposes under 43 U.S.C.A. § 141 to mention a few. In addition, by virtue of Executive Order No. 10355, dated May 26, 1952, the Secretary is authorized to issue moratoriums on applications and petitions for public lands, when in his discretion such action is warranted.

However, the statute further provides:

*"Provided,* that upon the application of any applicant qualified to make entry, selection, or location, under the public-land laws, filed in the land office of the proper district, the Secretary of the Interior *shall cause* any tract to be classified, and such application, if allowed by the Secretary of the Interior, shall entitle the applicant to a preference right to enter, select, or locate such lands if opened to entry as herein provided." (Emphasis added.)

Under this section of the statute, the discretion vested in the Secretary is partially removed. He still retains discretion to classify the land in question according to the categories set forth in the statute, when an application is filed, but he must act. When he acts and arrives at a classification, it must be supported by substantial evidence.

This language further limits the discretion of the Secretary to the classification categories themselves. The Court does not dispute the authority of the Secretary to sell the subject tract under the provisions of 43 U.S.C.A. § 1171, "The Isolated Tracts Act," had no application been filed. However, "more valuable or suitable for any other use than the use provided"—the only possible category under which such action could be taken, cannot be construed to mean by sale at public auction. The draftsmen of this language did not use the term "sale". Such "use" must be read to mean for any other purpose for which the government might have need of it. That is, the language clearly contemplates retention by the government.

The Congressional policy of allowing homestead entries on Taylor Grazing land where such land is more valuable for agricultural purposes remains unchanged today. There has been no Congressional deviation in such policy which would now require the government to receive full market value on public lands which are to be disposed of.

From the notes of the field examiner to the final decision of the Secretary of Interior, the land in question was found suitable for agricultural purposes. No consideration was given by the field examiner to advances made in land utilization which have occurred between the period of the first unsuccessful entry cited by the examiner in 1952 and plaintiff's application in 1961. Such advances, it is commonly known, have made possible the agricultural development of hitherto unproductive lands. Such developments may serve to explain the failure of earlier entrymen on the land in addition to the reasons offered by the examiner, i. e., size of the parcel, mismanagement and ignorance of land development procedures. Further, the examiner gave no consideration to the fact that in recent years successful entries have been made under the Desert Land Act in the same area. (See Form 4–1499a, Field Data, Par. 2. Occupancy Factors.)

The plaintiff-applicant fully complied with all the requirements for filing on the land and carrying through on appeal. Because of prior unsuccessful entries on the subject land and lack of assurances by the plaintiff that he would be successful if allowed to enter, the application was denied. Plaintiff was not afforded the opportunity to present such assurances.

The Court is aware that the defendant is not required to give plain-

tiff a hearing on his application. However, some means must be afforded plaintiff to give the assurances of successful entry which defendant finds lacking. Plaintiff attempted to submit further evidence of the suitability of the land plication for reconsideration by the Secretary. Whether this evidence was confor agricultural development in his apsidered by the Secretary in his affirmation of his former decision is uncertain. Such evidence, in the Court's view, makes out a prima facie showing that plaintiff could successfully develop the land for agriculture. Nothing in the administrative record is to the contrary with the possible exception of some conjecture by the field examiner to the effect that the unit size, 158.56 acres, might be too small to be developed on an individual basis. This was pure speculation on the part of the field examiner and was not a substantial factual basis for the final decision. That decision was simply based on the land's history of prior unsuccessful entries which in turn caused an increase in the bookkeeping and adjudicative functions of defendant.

Having reviewed the pleadings, the administrative record and the other exhibits on file herein, the Court determines the proper disposition of the case should be to remand it to the Secretary for further consideration.

The record now before the Court does not sustain the decision of the Secretary and must be set aside. The decision is not supported by substantial evidence and is not in accordance with the applicable law. Upon further proceedings herein by the Secretary, the plaintiff should be permitted to support his application by whatever evidence he can develop in such form as the Secretary may prescribe.

Wherefore, it is ordered, that the case be remanded to the Secretary of the Interior for further evidentiary proceedings consonant with this opinion.