Leslie F. **BLEAMASTER** and Norma V. Bleamaster, Appellants,

v.

Rogers C. B. **MORTON**, Secretary of the Interior, Appellee.

No. 24885.

United States Court of Appeals, Ninth Circuit.

Sept. 20, 1971.

Norna V. Bleamaster (argued), Leslie F. Bleamaster, pro se.

Jacques B. Gelin (argued), of Lands Divisions, Dept. of Justice, Shiro Kashiwa, Asst. Atty. Gen., Washington, D. C., Robert L. Meyer, U. S. Atty., Ernestine Tolin, Asst. U. S. Atty., Los Angeles, Cal. for appellee.

Before MERRILL, ELY and HUFSTEDLER, Circuit Judges.

MERRILL, Circuit Judge:

Appellants brought suit to overturn a decision of the Secretary of the Interior declining to classify certain public lands near Palm Springs, in the Coachella Valley in Riverside County, California, as suitable for entry under the Enlarged Homestead Act of February 19, 1909, 35 Stat. 639, as amended, 43 U.S.C. § 218 (1964). Summary judgment was granted for the Secretary and this appeal followed. We affirm.

On November 26, 1934, by Executive Order,[1] all of the disputed lands had been withdrawn from settlement, location, sale or entry and reserved for classification pending the Secretary's determination of the most useful purposes to which they might be put pursuant to the provisions of the Taylor Grazing Act, 48 Stat. 1269, 43 U.S.C. § 315 et seq. (1964).

On October 29, 1966, appellants filed an application for enlargement of their homestead by seeking entry to the disputed lands. The Palm Springs Desert Museum had previously filed an application for a fifty-year lease of part of the lands under the Public Recreational and Other Public Purposes Act of June 14, 1926, 44 Stat. 741 as amended, 43 U.S.C. § 869 (1964).[2] A field report had been entered in response to the Desert Museum's application which concluded that it was impracticable to devote the lands to agriculture and had recommended approval of the Desert Museum's proposal to expand its facilities by developing and maintaining an interpretative center for the preservation and study of California's rapidly vanishing desert environment. Suspending action on the Desert Museum's application until final disposition of appellants' petition for enlarged homestead entry, the Department of the Interior conducted a further field examination which established that the subject lands were unsuitable for agricultural development and were valuable primarily for their potential in supplying future residential and recreational needs of the Palm Springs area: i.e., as real estate investments.

On the basis of these reports, the District Land Office, on January 12, 1967, issued a decision proposing not to classify the subject lands for entry under the Enlarged Homestead Act. Appellants' ensuing protest was rejected by the State Director and the Secretary. On November 2, 1967, the Department granted the lease sought by the Desert Museum. The remaining lands were withheld in public ownership for "uses higher than agriculture." Appellants then brought this suit in federal district court.

We first dispose of appellants' contention that they had a right, under the Enlarged Homestead Act, to additional homestead entry on the subject lands. Since the provisions of that Act apply only to "nonmineral, nonirrigable, unreserved, and unappropriated surveyed public lands," 43 U.S.C. § 218, they are inapplicable in this case, where the disputed lands were withdrawn from entry and reserved by Executive Order. It seems clear, moreover, that holders of enlarged homestead rights have no vested right in any particular land; their right of entry is merely a "float" until the Secretary has classified the particular lands selected by them as suitable for entry. *See* Hopkins v. United States, 414 F.2d 464, 471–472 (9th Cir. 1969); Carl v. Udall, 114 U.S.App.D.C. 33, 309 F.2d 653, 656–657 (1962); Hall v. Hickel, 305 F.Supp. 723, 731 (D.Nev. 1969). *See also* Finch v. United States,

1. Executive Order No. 6910, dated November 26, 1934, was made pursuant to the Act of June 25, 1910, 36 Stat. 847, 43 U.S.C. §§ 141, 142 (1964). It reads in relevant part:
   "Now, therefore, by virtue of and pursuant to the authority vested in me by the act of June 25, 1910 (ch. 421, 36 Stat. 847), as amended by the act of August 24, 1912 (ch. 369, 37 Stat. 497), and subject to the conditions therein expressed, it is ordered that all of the vacant, unreserved and unappropriated public lands in the States of \* \* \* California \* \* \* be, and it hereby is, temporarily withdrawn from settlement, location, sale or entry, and reserved for classification, and pending determination of the most useful purpose to which such land may be put in consideration of the provisions of [the Taylor Grazing Act] of June 28, 1934, and for conservation and development of natural resources."

2. The lands which the Desert Museum sought to lease had also been withdrawn from entry and reservation on April 1, 1952, by Public Land Order No. 814, made pursuant to § 10 of the Act of December 29, 1916, 39 Stat. 865, 43 U.S.C. § 300, as lands necessary to insure access to Public Water Reserve No. 151.

387 F.2d 13 (10th Cir. 1967), cert. den. 390 U.S. 1012, 88 S.Ct. 1262, 20 L.Ed.2d 162 (1968).

■ Appellants next contend that while the Executive Order No. 6910 anticipates that lands withdrawn and reserved under its provisions will be classified according to the scheme established by the Taylor Grazing Act, the Secretary's disposition of the subject lands conflicts with that Act, specifically with 43 U.S.C. § 315f.[3] They argue that under the proviso of that section, the Secretary had a mandatory duty to "cause [the] tract to be classified" and that he has failed to do so.

We do not agree. "Classification" as used in § 315f is preliminary to opening the lands for entry in accordance with the classification under applicable public land laws. Here, field reports established the highest use to which the lands might be put under existing circumstances and that they were not suitable for agriculture. Implicit in rejection of appellants' application was a determination that the lands were not subject to classification for the use proposed by appellants and that opening the lands to entry was not justified in light of their apparent highest use. No purpose would be served by requiring the Secretary to go through the formalities of a classification that leads nowhere. As held in Carl v. Udall, *supra*, 309 F.2d at 657–658, the Secretary's action amounts to "classification" for retention in public ownership, a classification available under § 315f.

■ Appellants further contend that 43 U.S.C. § 315f barred the Secretary's subsequent classification of part of the lands for lease to the Desert Museum. This we reject. The lease classification, made pursuant to the Public Recreational and Other Public Purposes Act of June 14, 1926, 44 Stat. 741, as amended, 43 U.S.C. § 869 (1964), was a proper exercise of the authority granted to the Secretary by 43 U.S.C. § 315f to dispose of land found more suitable for any purpose other than grazing "under applicable public-land laws."[4]

We find appellants' remaining assignments of error without merit.[5] The Secretary's decisions were supported by substantial evidence on the record as a whole, and the agency action taken was not arbitrary, capricious, unlawful, or an abuse of discretion.

Affirmed.

3. 43 U.S.C. § 315f provides in relevant part: "The Secretary of the Interior is hereby authorized, in his discretion, to examine and classify any lands withdrawn or reserved by Executive order of November 26, 1934 (numbered 6910), and amendments thereto, and Executive order of February 5, 1935 (numbered 6964), or within a grazing district, which are more valuable or suitable for the production of agricultural crops than for the production of native grasses and forage plants, or more valuable or suitable for any other use than for the use provided for under this chapter, or proper for acquisition in satisfaction of any outstanding lien, exchange or script rights or land grant, and to open such lands to entry, selection, or location for disposal in accordance with such classification under applicable public-land laws, except that homestead entries shall not be allowed for tracts exceeding three hundred and twenty acres in area. Such lands shall not be subject to disposition, settlement, or occupation until after the same have been classified and opened to entry: * * * *Provided,*

That upon the application of any applicant qualified to make entry, selection, or location, under the public-land laws * * * the Secretary of the Interior shall cause any tract to be classified, and such application, if allowed by the Secretary * * * shall entitle the applicant to a preference right to enter, select, or locate such lands if opened to entry as herein provided."

4. The lease in this case was not a sale or complete divestiture of government interest in the land of the kind attempted under 43 U.S.C. § 315f in Richardson v. Udall, 253 F.Supp. 72 (S.D.Idaho 1966).

5. We note that the omissions in the agency record complained of by appellants were without substantial relevance to the issues before the District Court, were not prejudicial, and did not require judgment for appellants. *See* Palmer v. Dredge Corp., 398 F.2d 791, 795 (9th Cir. 1968), cert. den. Dredge Corp. v. Penny, 393 U.S. 1066, 89 S.Ct. 715, 21 L.Ed.2d 709 (1969).