John L. FAULKNER, Laura Jo Faulkner, R. Fred Faulkner, and Susan L. Faulkner, Plaintiffs-Appellants,

v.

James G. WATT,* Secretary of the Interior, et al., Defendants-Appellees.

No. 80–3023.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted July 8, 1981.

Decided Nov. 19, 1981.

* James G. Watt has been substituted for Cecil D. Andrus as the defendant under Appellate Rule 43(c)(1).

**810**

W. F. Ringert, Anderson, Kaufman, Anderson & Ringert, Boise, Idaho, for plaintiffs-appellants.

Jerry Jackson, Atty., Washington, D.C., for defendants-appellees.

Before SNEED, and BOOCHEVER, Circuit Judges, and CRAIG **, District Judge.

SNEED, Circuit Judge:

■ This case involves the narrow question of whether the Secretary of the Interior's undisputed obligation to classify, upon petition by a qualified applicant, certain lands under the Taylor Grazing Act, § 7, 43 U.S.C. § 315f as suitable or unsuitable for agriculture also requires the Secretary to *reclassify* lands whose best use has previously been considered. Under the Department of Interior's interpretation, plaintiffs are effectively barred from making an entry onto federal lands under the Desert Land Acts, 43 U.S.C. §§ 321–339. The Interior Board of Land Appeals (IBLA) and the district court sustained the Department's regulation refusing to accept any petitions for classification of lands that have already

** Honorable Walter E. Craig, Senior United States District Judge for the District of Arizo-

been classified. Jurisdiction in the district court rested on 28 U.S.C. § 1361 (mandamus to compel a federal officer to perform a duty owed the plaintiff). Our jurisdiction rests on 28 U.S.C. § 1291. We affirm.

## I.

### FACTS

The original Desert Land Act, 43 U.S.C. §§ 321–323, was enacted in 1877 to allow private access to and reclamation of federal land. Since enactment of § 7 of the Taylor Grazing Act in 1934, 43 U.S.C. § 315f, private parties may enter such federal lands only if the Secretary of the Interior has classified them as suitable for agricultural development under the Desert Land Acts. *See* 43 C.F.R. § 2400.0–3(a). If the Secretary classifies lands as suitable for agriculture after an applicant's petition for classification, the applicant is entitled to a preference right to enter, select, or locate such lands at the time they are opened to entry. 43 U.S.C. § 315f.

In 1970, in response to an application by several persons who sought entry onto federal land near Gooding, Idaho, the Idaho State Director of the Bureau of Land Management (BLM) classified the land as unsuitable for agriculture. His opinion was supported by two findings contained in a field report:

> It appears from the results of wells drilled to date that water in the volume required for the irrigation of the land under application does not exist, and the allowance of the applications would disrupt the management of the entire North Bliss Unit and the operations of the livestock users.

With regard to livestock users, the report notes:

> Allowance of these applications will make it impossible to realistically manage the remaining portion of the North Bliss Unit because of a development of a rotation grazing system.

na, sitting by designation.

. . . .

The Bliss Point area supplies 15 operators with approximately four to five weeks of early spring feed, and six weeks of late fall feed that cannot be replaced anywhere within these users' operations or the North Bliss Unit. (Excerpt of Record 39, 37.)

As provided in 43 C.F.R. 2450.5(b), the Director's decisions concerning the lands became the final order of the Secretary of the Interior on June 10 and July 15, 1970, respectively.

Beginning in 1974 the Faulkners sought to obtain a desert land entry on a portion of these lands, contending that irrigation was now feasible. The Faulkners filed at least three separate applications with the Idaho office of the BLM and each time their applications were denied.

The BLM informed the Faulkners that under its regulations it would not accept petition-applications for land that had already been classified. The BLM acknowledged that progress in sprinkler irrigation and the availability of water from an irrigation canal might mean that the prior 1970 classification of unsuitability for agriculture was no longer appropriate. It advised the Faulkners that it would review the classification in light of this new information. But because a comprehensive land use plan was being developed for the entire area, including the land sought by the Faulkners, there would be no final decision until completion of the plan. Finally, should the land be reclassified, the Faulkners were advised that they would not have any preference rights over the other applicants.

The Interior Board of Land Appeals affirmed the BLM's denial of the Faulkners' petition for classification on July 26, 1976. The Faulkners then amended their complaint in a prior action in district court to seek judicial review of the IBLA's decision. The district court granted summary judgment to the government.

The Faulkners seek three things. First, they want the BLM to accept their applications for entry on the tracts they wish to develop. Second, they want the Secretary to reclassify the land as suitable for agriculture, and finally, if the land is so reclassified, they want to receive the preference rights specified in 43 U.S.C. § 315f.

## II.

## DISCUSSION

Section 315f, which requires the classification of land as suitable for agriculture prior to opening it for entry, provides in pertinent part that:

The Secretary of the Interior is hereby authorized, in his discretion, to examine and classify any lands . . . which are more valuable or suitable for the production of agricultural crops than for the production of native grasses and forage plants. . . . Such lands shall not be subject to disposition, settlement, or occupation until after the same have been classified and opened to entry . . . . *Provided*, That upon the application of any applicant qualified to make entry, selection, or location, under the public-land laws . . . the Secretary of the Interior shall cause any tract to be classified, and such application, if allowed by the Secretary of the Interior, shall entitle the applicant to a preference right to enter, select, or locate such lands if opened to entry as herein provided.

With regard to land which has already been classified under a final order of the Secretary, a BLM regulation provides as follows:

43 C.F.R. § 2450.6 Effect of final order.

(a) A final order of the Secretary shall continue in full force and effect . . . until an authorized officer revokes or modifies it. Until it is so revoked or modified, all applications and petition-applications for the lands not consistent with the classification of the lands will not be allowed. Any payments submitted therewith will be returned. If the order is revoked or modified, the land will be opened to entry on an equal-opportunity basis after public notice. . . .

The effect of the regulation is to deny preference rights to applicants who seek to have lands reclassified. Should such lands

later .be opened for entry, they will be distributed on an "equal-opportunity" basis, which means by lottery. The Faulkners contend that the regulation is invalid.

The Faulkners also argue the final proviso of section 315f means that any time an applicant seeks to have land classified, *whether or not it has been previously classified*, the applicant can require the Secretary of the Interior to undertake this duty. Further, the applicant is entitled to a preference right. This is undoubtedly correct as to unclassified land. *Nelson v. Kleppe*, 457 F.Supp. 5, 8 (D. Idaho 1976), aff'd. sub nom., *Nelson v. Andrus*, 591 F.2d 1265 (9th Cir. 1978). The only question on appeal is whether the Secretary's interpretation of the proviso as not applying to land that is already classified, is an abuse of discretion. 5 U.S.C. § 706(2)(A); *Ness Inv. Corp. v. United States Dept. of Agriculture, Forest Service*, 512 F.2d 706, 715 (9th Cir. 1975). The statute does not specifically speak of land that has already been classified.

■ In reviewing the interpretation given a statute by an administering agency, a court will ordinarily give the agency interpretation substantial deference. As noted by the Supreme Court in *McLaren v. Fleisher*, 256 U.S. 477, 481, 41 S.Ct. 577, 578, 65 L.Ed. 1052 (1921), a public lands case involving preference rights,

> [T]he practical construction given to an act of Congress, fairly susceptible of different constructions, by those charged with the duty of executing it is entitled to great respect and, if acted upon for a number of years will not be disturbed except for cogent reasons.

See *Udall v. Tallman*, 380 U.S. 1, 16, 85 S.Ct. 792, 801, 13 L.Ed.2d 616 (1965); *Bronken v. Morton*, 473 F.2d 790, 797 (9th Cir. 1973), cert. denied, *Boothe v. Morton*, 414 U.S. 828, 94 S.Ct. 51, 38 L.Ed.2d 62 (1973). Refusing applicants for lands which have been withdrawn or classified is a longstanding policy of the Department of Interior, see *Juan v. Menchaca*, 14 IBLA 212 (1974); *Robert v. Ford*, 4 IBLA 321 (1972), and is incorporated in other Department regulations besides 43 C.F.R. § 2450.6. *See*

43 C.F.R. § 2091.1(a) and (d) (department will not hold applications in suspense pending the future availability of land).

The Secretary maintains that the Department's interpretation is the most equitable one because applicants who may have chosen not to file on land in reliance upon a prior classification will have an equal chance with other applicants if the land is later opened for entry. The Department also maintains that requiring the state directors of the BLM to go through the formalities of classification every time an applicant requested it would impose a needless administrative burden particularly because most remaining lands in the public domain are either more valuable for other purposes or unsuited for agriculture.

Finally, requiring the Secretary to focus on one narrow parcel of land to determine whether that parcel is suited for agriculture is out of step with modern concepts of land use planning which require the consideration of numerous and interacting factors over wide areas. These concepts are now mandated by section 1712 of the Federal Land Policy and Management Act of 1976, 43 U.S.C. § 1701 *et seq.* (1976).

■ The Faulkners argue that the purpose of the Taylor Grazing Act is to ensure that land with agricultural potential is identified and used. They contend that according a preference right to the first applicant is essential to create the incentive to identify agricultural land. We disagree. The purpose of the Taylor Grazing Act is to stabilize the livestock industry and protect the rights of sheep and cattle growers from interference. *United States v. Fuller*, 442 F.2d 504 (9th Cir. 1971), rev'd on other grounds, 409 U.S. 488, 93 S.Ct. 801, 35 L.Ed.2d 16 (1973); *United States v. Achabal*, 34 F.Supp. 1 (D.Nev.1940). *See NRDC v. Morton*, 388 F.Supp. 829 (D.D.C.1974), aff'd without opinion, 527 F.2d 1386 (D.C. Cir.1976), cert. denied, 427 U.S. 913, 96 S.Ct. 3201, 49 L.Ed.2d 1204 (1976). The identification of agricultural land is secondary.

The Faulkners recognize that they cannot require the Secretary to classify the tracts

in question as suitable for agriculture, but they make a lengthy argument in their reply brief that he must accept their petitions for reclassification regardless.

*Bleamaster v. Morton*, 448 F.2d 1289 (9th Cir. 1971), is applicable. There we treated the Secretary's decision to retain lands in public ownership as a "classification" for purposes of section 315f. There was no need to require the Secretary to go through the empty gesture of formally "classifying" the land for public ownership, since his denial of an application for entry amounts to such a classification. *Id.* at 1292. Here, forcing the Secretary to accept plaintiff's petition-application would likewise be an empty gesture, since petitioner concedes that he has no power to require the Secretary to change the classification. Moreover, while section 315f concededly rewards applicants for unclassified land with a preference right if the land is classified as suitable for agricultural use and opened for entry, we find unpersuasive the argument that applications to *reclassify* federal lands must be similarly rewarded. Once the land has been classified, it has been effectively called to the attention of the Secretary. Indeed, the parcels at issue here were at the time of the application the subject of an ongoing comprehensive study. Under these circumstances the Secretary's rule refusing to accept any new petition-applications on classified land is not an abuse of discretion.

The Faulkners seek to distinguish the *Bleamaster* case on the grounds that reclassification would not be futile. Because the 1970 classification was based solely on the lack of water available at the time, the Faulkners claim that greater water availability makes it likely that the land would be reclassified.

In fact, the prior classification was not based solely on the lack of water. It was also based upon the value of the land to livestock operations. Furthermore, the BLM has procedures to review prior classification which may later become improper. These procedures, which were for the most part followed in this case, are detailed in a "BLM Manual."[1]

The BLM notified Faulkner that the classification would be reviewed, as required by section 2451.13B 2a of the manual. The application was referred to the Shoshone District Office as required by section 2451.-13B 2b. That office in turn reviewed the classifications, but stated that a reclassification decision could not be made until the completion of a land use plan for the entire area. There is nothing in the record to indicate that final action has been taken.[2]

---

1. Section 2451.13B 2 of the BLM Manual provides in relevant part:

    If sufficient data is not available . . . return the [petition-application] to the petitioner-applicant.
    a. Explain that the classification will be reviewed and if reclassification is proper, the lands will be made available on an equal opportunity basis.
    b. Determine within 60 days whether the classification is still proper. Based on the results of the District Office's review of the classification, the land office will inform the petitioner-applicant that the classification is still proper or that the land will be reclassified and made available on an equal opportunity basis.

2. In *Andrus v. Idaho*, 445 U.S. 715, 730 n.12, 100 S.Ct. 1450, 1459, 63 L.Ed.2d 739 (1980) the Court noted that such decisions would be reviewable under the Administrative Procedure Act, 5 U.S.C. § 706.

    That the Shoshone District Office has neither confirmed the original classification nor reclassified the parcels within 60 days as required by section 2451.13B 2b of the BLM Manual might suggest that the BLM has failed to follow its own policies. However, the ongoing preparation of the area land use plan makes strictly literal interpretation of the BLM Manual inappropriate.

    *Nelson v. Kleppe*, 457 F.Supp. 5, 12 (D. Idaho 1976), which the Court of Appeals adopted as its own opinion, supplemented by the cases cited therein decided subsequent to the district judge's decision, *Nelson v. Andrus*, 591 F.2d 1265, 1266 (9th Cir. 1978), is on point. After a BLM directive had advised an applicant that his approved application would be held in abeyance pending the result of a comprehensive land use plan for the entire Black Canyon Planning Unit of 55,000 acres, the Secretary went ahead and approved the initial classification decision without waiting for completion of the comprehensive plan. The district court held that the decision whether to delay classification until completion of the plan was "best directed to the Secretary's discretion and expertise and

### III.

### CONCLUSION

In summary, we hold that the Secretary's interpretation of the statute as providing for a preference right and mandatory duty of classification only with regard to initial classification decisions is reasonable. Because applicants seeking land which is already classified would not be entitled to a preference right, there is no reason to accept their applications. With regard to the Department's review of the prior classification decision in this case, the record does not indicate that a final decision has ever been made. Any review by this court, therefore, would be premature. We affirm the district court's decision.

AFFIRMED.

[was] within his jurisdiction to make ....." *Id.* The same is true of the BLM's decision to await completion of the plan here.