LINN LAND COMPANY, an Oregon corporation, Attorney in Fact for Mike Swab, Gustave Borowski and Peter Horish, Plaintiff,

v.

Stewart L. UDALL, Secretary of the Interior, Defendant.

Carl E. FORSBERG, Plaintiff,

v.

The Honorable Stewart L. UDALL, Secretary of the Interior of the United States, Defendant.

Casper Joseph SCHMAND, Plaintiff,

v.

The Honorable Stewart L. UDALL, Secretary of the Interior of the United States, Defendant.

PROPERTY MANAGEMENT COMPANY, an Oregon corporation, Plaintiff,

v.

The Honorable Stewart L. UDALL, Secretary of the Interior of the United States, Defendant.

BATTLE MOUNTAIN COMPANY, a Wyoming corporation, Plaintiff,

v.

The Honorable Stewart L. UDALL, Secretary of the Interior of the United States, Defendant.

Civ. Nos. 63-264, 63-472, 63-484, 64-28, 64-29.

United States District Court
D. Oregon.

March 16, 1966.

William B. Murray, Portland, Or., for plaintiffs.

Jack G. Collins, Asst. U. S. Atty., and Sidney I. Lezak, U. S. Atty., Portland, Or., for defendant.

## OPINION

KILKENNY, District Judge:

Each plaintiff, on this review of a decision of the Secretary, seeks a judgment requiring the defendant Secretary to issue patents to parcels of land selected by each plaintiff in satisfaction of certain scrip rights, obligations of the United States to pay, in land, for other land which it received. The rights, if any, of the plaintiffs and the obligations, if any, of defendant in his official capacity arise out of the Acts of Congress of June 4, 1897 (30 Stat. 36), of July 1, 1898 (30 Stat. 620), and amendments of June 6, 1900 (31 Stat. 614), amendment of February 27, 1917 (39 Stat. 946), and the savings clause of the Act of March 3, 1905 (33 Stat. 1264). The Valentine scrip issued pursuant to Act of Congress of April 5, 1872 (17 Stat. 649), the Mc-Kee Certificate, pursuant to Act of Congress of January 25, 1853 (10 Stat. 745), as amended March 1, 1889 (25 Stat. 1307).

Being of the belief that the same general principles of law apply in each one of the cases, although different statutes and somewhat different issues are involved, I shall discuss each issue as though raised in all cases. I believe my conclusions on those issues will be dis-

positive of all of the principal issues presented.

In general, the legislation gave the Government the right to give to those conveying lands to the Government, a right to select Government lands, in lieu of the lands so conveyed to the Government. In the Battle Mountain case, the Santa Fe Railroad exercised its rights, under the legislation, and in 1908 conveyed certain lands to the Government for the in lieu selection rights here in question. These rights were transferred by the Santa Fe to plaintiff's predecessors in interest. In turn, the predecessors transferred these rights to the plaintiff, who attempted to exercise the rights in 1961, and the Department of the Interior challenged the right of assignment by the Santa Fe. In the Linn Land and other cases, the Secretary claimed that he had classified the lands pursuant to the provisions of the Taylor Grazing Act (43 U.S.C. § 315f) and that under such classification the particular land selected was not subject to a scrip right.

In Linn Land, the Secretary classified the lands as well suited for public recreational use. Some quibble is made as to whether a separate determination was made as to each of the six parcels selected.

In Fosberg, the Secretary classified the lands as more valuable and suitable under the sustained yield forest management program of the Bureau of Land Management.

In Schmand, the Secretary found that the lands were a vital and integral part of a sustained yield forest management program of the Bureau of Land Management.

In Property Management Company, the Secretary classified the tract as vital and an integral part of the sustained yield forest management program of the Bureau of Land Management.

Prior to the passage of the Taylor Grazing Act in 1936, as amended in 1937, there was no limitation on the type of land to be selected under scrip, as long as it was vacant and non-mineral. By an Executive Order on November 26, 1934, the President of the United States withdrew all unreserved and unappropriated Western lands from selection. As part of a general plan to protect the Government's lands, the Taylor Grazing Act was enacted and under this Act the Secretary, in his discretion, was given the power to examine and classify lands as to whether they were more valuable for grazing, production of crop, any other use, or to be exchanged for selection rights as here involved. Here, the Secretary classified the lands as "more valuable or suitable for any other purpose than provided for in this chapter." Namely, that they were more valuable and suitable under the Bureau of Land Management's sustained yield program for forest timber, and should not be classified as eligible for in lieu selection rights.

Plaintiffs claim that this Court has jurisdiction under the following statutes:

(1) 28 U.S.C. §§ 1361, 1391.

(2) 28 U.S.C. §§ 2201, 2202, and

(3) 5 U.S.C. § 1009, the Review Section of the Administrative Procedure Act.

It is my considered judgment that the jurisdictional claims, with the exception of the review procedure of the Administrative Procedure Act, are completely unsound. The United States of America would be an indispensable party on those claims. If plaintiffs are permitted to invoke the jurisdiction of the Court under the indicated statutes, other than the review procedure, they would entirely circumvent the intentions of the Congress in enacting the Taylor Grazing Act and the Administrative Procedure Act.

Consequently, I shall treat each of the cases as being before me on review from the decision of the Secretary of the Interior. Those issues presented by the respective pre-trial orders, which are not on review, will not be considered in this Court.

I.

IS THE DECISION OF THE SECRETARY THAT LANDS CHOSEN BY

## THE PLAINTIFFS ARE NOT TO BE CLASSIFIED. FOR DISPOSAL, SUBJECT TO JUDICIAL REVIEW?

The Government urges that the Secretary's discretionary determination under § 7 of the Taylor Grazing Act (43 U.S.C. § 315f), that the land selected by the individual plaintiffs for their in lieu rights are not to be classified for disposal, is committed to agency discretion and is not reviewable in the light of § 10 (2) of the Administrative Procedure Act (5 U.S.C. § 1009(2)). Consequently, says the Secretary, the action should be dismissed for want of jurisdiction. The Executive Order, carrying into effect the provisions of the Taylor Grazing Act, was promulgated on November 26, 1934. This Act temporarily withdrew from settlement, location, sale or entry, all vacant, unreserved and unappropriated public lands in certain states, including the state of Oregon, where the subject lands are located. The lands were withdrawn pending the determination of the most useful purpose to which said land might be put in consideration of the provisions of the Taylor Grazing Act, having in mind the conservation and development of all natural resources of the nation.

■ I have grave doubts as to a court's jurisdiction to review the power of the Secretary to classify the lands pursuant to the legislation and the Executive Order. The decisions in Ferry v. Udall, 336 F.2d 706 (9th Cir. 1964), and State of Wyoming v. United States, 255 U.S. 489, 41 S.Ct. 393, 65 L.Ed. 742 (1921), cited by plaintiffs, construing other legislation and different facts, are not controlling. For that matter, the *Ferry* decision favors the Government's position, rather than that of the plaintiffs. I am inclined to hold that in the present case the Secretary was under a positive mandate to act, rather than a permissive right to act. Panama Canal Co. v. Grace Line, Inc., 356 U.S. 309, 78 S.Ct. 752, 2 L.Ed.2d 788 (1958) draws this distinction, as does Schilling v. Rogers, 363 U.S. 666, 80 S.Ct. 1288, 4 L.Ed.2d 1478 (1960), and United States v. Wiley's Cove Ranch, 295 F.2d 436 (8th Cir. 1961).

Although those are my views on this subject, the likelihood of an appeal dictates that I record my views on the other subjects properly raised on this review.

## II.

## ASSIGNABILITY OF SANTA FE RAILROAD SELECTION RIGHTS.

Here, the Battle Mountain selection rights acquired through the Santa Fe Railroad, are to be distinguished from the other rights.

■ Battle Mountain's rights arose under the Act of June 4, 1897 (30 Stat. 36), which, in pertinent part, provided:

"That in cases in which a tract covered by an unperfected bona fide claim or by a patent is included within the limits of a public forest reservation, *the settler or owner thereof* may, if he desires to do so, relinquish the tract to the Government, and may select in lieu thereof a tract of vacant land open to settlement not exceeding in area the tract covered by his claim or patent; * * *." (Emphasis supplied.)

That particular Act was repealed on March 3, 1905 (33 Stat. 1264), but the rights granted to the Santa Fe Railroad were saved. The Government urges that the rights acquired by Santa Fe were purely personal and that nothing in the Act contemplated the assignability of those rights. The Act itself refers to "owner or settler." The Government argues that the right of the railroad was terminated by the reconveyance by the Government of lands earlier relinquished by the railroad. On October 12, 1956, pursuant to 43 U.S.C. § 872, when the land was conveyed to Santa Fe, it executed a release of any rights it had under the in lieu selection rights. Krug v. Santa Fe Pacific R. R. Co., 329 U.S. 591, 67 S.Ct. 540, 91 L.Ed. 527 (1947). It must be conceded that the Government, in the past, has allowed what amounted Stock & Land Co., 1 F.Supp. 229 (S.D. to an assignment, Begue v. Grizzly Live Cal.1932), and that later legislation on the same subject (42 Stat. 1017) recog-

nizes the rights of persons holding selection rights and "heirs and assigns." True enough, this legislation was not passed until approximately twenty-five years after the rights were granted under the legislation in 1897. But it does show a practical interpretation as placed on the legislation by the Congress. I find that the selection rights in question were assignable.

## III.

### REAL PARTY IN INTEREST.

The Government's contention that the Santa Fe Railroad, rather than Battle Mountain, is the real party in interest, is without merit. Battle Mountain's reliance on Krug v. Santa Fe Pacific R. R. Co., supra, is entirely misplaced. The Secretary has long recognized the rights of those who held powers of attorney, coupled with an interest. Some of these are involved in the Linn Land Company case. The Commissioner recognized the "power of attorney" in Begue.

## IV.

### ANTI-ASSIGNMENT ACT. (31 U.S. C. § 203.)

█ It is my opinion that the "claim" mentioned in this statute is concerned with the right to demand money from the United States, and has no application whatsoever with the legislation here under scrutiny. Typical of the cases cited by the Government is United States v. Dow, 357 U.S. 17, 78 S.Ct. 1039, 2 L.Ed. 2d 1109 (1958). It treats of the assignment of a common compensation claim against the Government, and has nothing to do with a right such as we have before us.

## V.

DID THE SECRETARY EXCEED HIS STATUTORY AUTHORITY, OR VIOLATE THE FIFTH AMENDMENT, WHEN HE REJECTED THE PLAINTIFFS' APPLICATIONS?

█ Plaintiffs argue that the Congress never intended the Taylor Grazing Act to affect scrip rights and that the Act was only applicable to those lands suitable for grazing. Attention is drawn to the legislative history of the Act.[1] And Executive Order 6910, withdrawing the public lands in the western states from settlement, location, sale or entry was made pursuant to what is commonly known as the Withdrawal Act of 1910. (36 Stat. 847). Plaintiffs urge that the Executive Order, as applied to their scrip rights, would be invalid and cite the case of United States v. Northern Pac. Ry. Co., 256 U.S. 51, 41 S.Ct. 439, 65 L.Ed. 825 (1921) and 311 U.S. 317, 61 S.Ct. 264, 85 L.Ed. 210 (1940), in support. Likewise, plaintiffs contend that § 7 of the Taylor Grazing Act would be invalid if applied to the scrip rights under the doctrines taught in the Northern Pac. Ry. cases, supra. I do not read into the *Northern Pacific* cases, nor the legislative history of the Act, the teachings which plaintiffs find so apparent. These cases lay down the rule that there *must be* some land which is subject to selection rights. Nor do I believe that the Secretary's interpretation of the powers conveyed under § 7 and the Executive Order, constitute an improper or unconstitutional delegation of congressional powers to an administrative official within the doctrines stated in Panama Refining Co. v. Ryan, 293 U.S. 388, 420, 55 S.Ct. 241, 79 L.Ed. 446 (1935) and Schechter Poultry Corp. v. United States, 295 U.S. 495, 55 S.Ct. 837, 79 L.Ed. 1570 (1935). In passing, I might add that the value of these cases in passing on my problems, has been questioned and seriously modified by later United States Supreme Court decisions. Davis, in his work on Administrative Law, Volume I, §§ 2.01–2.16, is of the belief that neither Panama or Schechter would be followed today on the same facts.

Carl v. Udall, 114 U.S.App.D.C. 33, 309 F.2d 653 (1962) seems to be the only case which discusses the congressional intent when passing the

1. Act of June 28, 1934 (48 Stat. 1272).

Taylor Grazing Act. There, the discussion is quite limited and, of little value. However, the decision in that case construing the language "any other use," as set forth in § 7 of the Act, as containing a separate and distinct category which may include lands otherwise proper for scrip selection, seems to me to be sound. The record would here indicate that there are sufficient nonclassified lands so that there would not be a "lasting and critical deficiency." Carl v. Udall, supra. In analyzing the *Northern Pacific* cases, on which plaintiffs rely, we must keep in mind that the plaintiffs here, as distinguished from the claimants in those cases, are not limited to a specified area from which land can be selected. Neither is LaRue v. Udall, 116 U.S.App.D.C. 396, 324 F.2d 428 (1963) of help to the plaintiffs. That case involved a determination that certain lands on which the plaintiff had grazing rights should be reclassified so that it could be used for national defense purposes. Again, the language of the majority opinion is more favorable to the position of the Government, than it is to that taken by the plaintiffs. It seems to me that Carl v. Udall, supra, is precisely in point on this issue and the related issues of due process and the impairment of an obligation of a contract.

It is my view that § 7 does not contain an unlawful, unjust or unreasonable delegation of powers to the Secretary. While no case has been cited, nor found, which is exactly in point, the teachings of Tagg Bros. & Moorehead v. United States, 280 U.S. 420, 50 S.Ct. 220, 74 L.Ed. 524 (1930); New York Central Securities Corp. v. United States, 287 U.S. 12, 53 S.Ct. 45, 77 L.Ed. 138 (1932), are worthy of analysis and support the Secretary's position. Of course, these standards must not be viewed in isolation. They gain their vitality from the background and purposes of the entire Act. Certainly, the Constitution does not require Congress to foresee the countless situations to which it may wish a particular policy to be applied and to formulate specific rules for each problem as it arises. American Power & Light Co. v. S. E. C., 329 U.S. 90, 104, 67 S.Ct. 133, 91 L.Ed. 103 (1946).

The argument that § 7 violates the Fifth Amendment's due process provision, in that it impairs the obligation of a contract fails to recognize that this provision applies only to the states. However, it has been used to set Fifth Amendment standards in connection with the taking of property without due process of law. John McShain, Inc. v. District of Columbia, 92 U.S.App.D.C. 358, 205 F.2d 882, 883–884 (1953), cert. den. 346 U.S. 900, 74 S.Ct. 227, 98 L.Ed. 400 (1953). The entire thrust of plaintiffs "due process" argument fails when viewed in the light of the power of the Congress and the Secretary under Article IV, § 3 of the Constitution, which authorizes the Congress to dispose of and regulate lands belonging to the United States. Of course, all sections of the Constitution must be construed together. Where the alleged injuries from the "taking" are indirect and consequential and result from the exercise of a lawful power, such as the Congress acting under Article IV, § 3, supra, the Fifth Amendment provision has no application. Veix v. Sixth Ward Building & Loan Ass'n, 310 U.S. 32, 60 S.Ct. 792, 84 L.Ed. 1061 (1940); In re Community Power & Light Co., 33 F.Supp. 901 (S.D.N.Y. 1940), legal tender cases Knox v. Lee, 12 Wall. 457, 551, 79 U.S. 457, 551, 20 L. Ed. 287 (1870). Although these cases do not involve a state of facts similar to ours, it is logical to apply the doctrine stated in those cases to a land classification as mentioned in § 7. Certainly, the Secretary was acting pursuant to a power enumerated in the Constitution and properly delegated to him.

## VI.

## CLASSIFICATION IN LINN LAND CASE.

It is urged that the lands involved in the Linn Land case had actually been classified for disposal. The record discloses that the lands had been withdrawn

and reserved for federal power purposes on November 29, 1956, by order of the Department of the Interior[2] and then restored.

Clearly, the restoration does not classify the lands or in any way affect the Secretary's right of disposal or classification under the Taylor Grazing Act.

## VII.

### ESTOPPEL.

The claims that certain agents of the Bureau of Land Management made certain representations to the plaintiffs, on which they relied, and that the Secretary should be estopped from denying the applications is worthy of little comment. It is well settled that an officer, or even an agency, of the United States, to whom no administrative authority has been delegated, cannot estop the United States even by an affirmative undertaking to waive or surrender a public right. State of Utah v. United States, 284 U.S. 534, 545–546, 52 S.Ct. 232, 76 L.Ed. 469 (1932); Wilber Nat'l Bank v. United States, 294 U.S. 120, 123–124, 55 S.Ct. 362, 79 L.Ed. 798 (1935); United States v. Stewart, 311 U.S. 60, 70, 61 S.Ct. 102, 85 L.Ed. 40 (1940).

## VIII.

### CONCLUSIONS.

Summarizing, even if the action of the Secretary in classifying the lands, as he did, under the Taylor Grazing Act, was reviewable, I would, and do, hold that his expertise in the field of classification was such that it should not be disturbed by the courts, and that his action was not arbitrary, capricious nor abusive discretion, nor otherwise not in accordance with law, nor was his action in excess of statutory jurisdiction, authority or limitations nor short of statutory right. Furthermore, I hold that the Secretary observed the procedures required by law and that his decision was supported by substantial evidence.

Only those questions which have been properly presented to the Secretary should be reviewed in this Court. Federal Power Comm. v. Colorado Interstate Gas Co., 348 U.S. 492, 75 S.Ct. 467, 99 L.Ed. 583 (1955); Unemployment Compensation Comm. of the Territory of Alaska v. Aragon, 329 U.S. 143, 67 S.Ct. 245, 91 L.Ed. 136 (1946). The Court can even refuse to hear constitutional questions which were not presented to the administrative agency. Pacific Gas & Elec. Co. v. S. E. C., 139 F.2d 298 (9th Cir. 1943), aff'd. 324 U.S. 826, 65 S.Ct. 855, 89 L.Ed. 1394 (1945), rehearing denied 324 U.S. 890, 65 S.Ct. 1010, 89 L.Ed. 1437 (1945); DeGorter v. Federal Trade Comm., 244 F.2d 270 (9th Cir. 1957); California Interstate Telephone Co. v. F. C. C., 117 U.S.App.D.C. 255, 328 F.2d 556 (1964).

If plaintiffs' claim that some of the issues were not properly presented to the Secretary, they have a right, on remand, to ask the Secretary to re-open the cause for the purpose of passing on those issues.

Defendant's motion, in each case, for a judgment affirming the action of the Secretary is allowed. Proper judgments of affirmance shall be entered, with the exception of Battle Mountain. In that case, the Secretary did not reach a point for the use of his discretion. He held,

2. "The lands hereinafter described, so far as they are withdrawn and reserved for power purposes in Power Site Reserve No. 664 of December 12, 1917, are hereby restored to disposition under the public land laws, subject to the provisions of section 24, of the Federal Power Act of June 10, 1920 (41 Stat. 1075; 16 U.S.C. § 818, as amended.)

\* \* \* \* \*

"No application will be allowed under the homestead desert land, small tract, or other nonmineral public land laws, unless the lands have already been classified as valuable or suitable for such type of application or shall be so classified upon consideration of an application. Any application that is filed will be considered on its merits. The lands will not be subject to occupancy or disposition until they have been classified."

as a matter of law, that the assignment by the Santa Fe to Battle Mountain's predecessors was non-assignable and, therefore, void. Earlier in this opinion, I expressed a view completely opposite to that of the Secretary and held that the scrip rights were assignable. Therefore, the decision of the Secretary in Battle Mountain must be set aside. In this case we are not concerned with the Secretary's powers under the Taylor Grazing Act. On remand, the Secretary shall recognize the scrip now owned by this claimant and duly pass on its claim that the lands in question be classified as eligible for in lieu selection rights.

The Government's rights, if any, against Santa Fe are not here in issue.