Ferris F. BOOTHE, Plaintiff,

v.

Walter J. HICKEL, Secretary of the Interior, et al., Defendants.

No. R–2048.

United States District Court,
D. Nevada.

Oct. 15, 1969.

**1274**

Bradley & Drendel, Reno, Nev., and Black, Kendall, Tremaine, Boothe & Higgins, by Ferris F. Boothe, Portland, Or., for plaintiff.

Joseph L. Ward, U. S. Atty., Julien G. Sourwine, Asst. U. S. Atty., Reno, Nev., for defendants.

## ORDER GRANTING SUMMARY JUDGMENT

BRUCE R. THOMPSON, District Judge.

For the reasons stated in orders this day filed in companion cases, Hall v. Hickel, D.C., 305 F.Supp 723, and Bronken v. Hickel, D.C., 305 F.Supp. 723, that is to say, because the first claim for relief in plaintiff's Complaint seeks review of agency action which has by law been committed to agency discretion, the defendants' Motion for Summary Judgment on the first claim for relief is granted.

The second claim for relief is somewhat different. The Act of August 31, 1964 (78 Stat. 751), provided:

"That, except for military bounty land warrants, all claims and holdings recorded under the Act of August 5, 1955 (69 Stat. 534, 535) [set out as a note under this section], which are not satisfied in one of the ways hereafter set forth, shall become null and void on the later of the two following dates: (a) January 1, 1970, or, in the case of soldiers' additional homestead claims, January 1, 1975; (b) at the termination of any transaction initiated pursuant to this Act.

"Sec. 2. Prior to July 1, 1966, holders of claims recorded under the Act of August 5, 1955, may apply to the Secretary of the Interior to have conveyed to them, in satisfaction of their claims, such lands as they may, in their applications, designate. The Secretary shall thereafter convey the selected lands if he finds them to be proper, under existing law, for such disposition, and if the claim upon which an application is based is determined to be valid. As used in this Act, the terms 'lands' and 'land' include any rights or interests therein.

"Sec. 3. (a) Prior to January 1, 1967, the Secretary shall classify, for conveyance and exchange for each type of claim recorded under the Act of August 5, 1955, public lands in sufficient quantity so as to provide each holder of such a claim with a reasonable choice of public lands against which to satisfy his claim. The public lands so classified shall be of a value of not less than the average fair market value, determined by the Secretary as of the date patent issued, of those public lands actually conveyed in exchange for each type of claim since August 5, 1955.

"(b) Holders of recorded claims may apply for reasonably compact areas of land so classified, and, upon his determination that the claim upon which an application is based is valid, the Secretary shall convey such lands to the applicant.

"Sec. 4. Prior to January 1, 1968, the Secretary shall, by registered mail

or certified mail sent to the address of record of each person having an unsatisfied claim, offer in satisfaction of such claim lands of a value of not less than the average fair market value of those public lands actually conveyed in exchange for each type of claim since August 5, 1955. Fair market value shall be determined in the manner prescribed in section 3 of this Act. Upon acceptance of the offer, the Secretary shall convey the lands to the claimant, if he determines that the claim is valid.

"Sec. 5. In respect of any type of claim recorded under the Act of August 5, 1955, not more than three conveyances of public lands in exchange for which have taken place since that date, the Secretary shall determine the type of claim which it most nearly resembles, and at least four conveyances in exchange for which has taken place since August 5, 1955, and shall, for the purposes of this Act, treat it in all respects as if it were such type of claim.

"Sec. 6. Prior to January 1, 1970, or, in the case of soldiers' additional homestead claims, January 1, 1975, any person who has a claim recorded pursuant to the Act of August 5, 1955, by written notice to the Secretary of the Interior, or any officer of the Department of the Interior to whom authority to receive such notice may be delegated, may elect to receive cash instead of public land in satisfaction of his claim, at a rate per acre equal to the average value of the lands offered by the Secretary under section 4 of this Act. Upon a determination that the claim is valid, the Secretary or his delegate shall certify the claim to the Secretary of the Treasury who is authorized and directed to pay the claim out of any money in the Treasury not otherwise appropriated. Acceptance of the money shall constitute a full and complete satisfaction of the claim or holding for which the money is paid: Provided, That no agent or attorney acting on behalf of another to procure a payment under this Act shall demand, accept, or receive more than 10 per centum of the payment made, and any agreement to the contrary shall be null and void."

Plaintiff asserts land selection rights known as Soldiers' Additional Rights. Plaintiff alleges that the Secretary, in compliance with section 3 of the aforesaid Public Law, has classified certain public lands as available for satisfaction of such rights but that the Secretary has acted contrary to law in the following particulars, (1) the minimum fair value standards have been limited to the average of like transactions between August 5, 1955 and August 31, 1964; (2) the Secretary, by regulation (43 CFR 2221.07e) has established $250 per acre as the minimum value for soldiers' additional homestead rights and $275 per acre as the maximum value; (3) the Secretary had no right to fix a maximum value; (4) plaintiff has not been provided with a "reasonable choice of public lands" against which to satisfy his claims. Plaintiff also complains of the rejection by the land office of applications filed by him for lands not among those classified by the Secretary as available for soldiers' additional rights. Section 2221.2–1 of the regulations specifically authorizes such rejection.

Inasmuch as the applications under the Second Claim of the Complaint were made after July 1, 1966, sections 2 and 3(b) of Public Law 88–545, supra, expressly authorize the rejection of applications for specific lands and support the legality of section 2221.2–1 of the regulations. Plaintiff is restricted to applying for lands which already have been classified under section 3 of the Act for this disposition.

In connection with plaintiff's complaints about the regulations fixing a maximum value of lands disposable for satisfaction of his selection rights and of the general valuation procedures of the Secretary, plaintiff presents appealing arguments and persuasive data toward the conclusion that for approximately fifteen years, the Secretary of

**1276**

the Interior has not been at all receptive to the idea of patenting public lands in satisfaction of plaintiff's rights. Plaintiff's struggles to acquire lands satisfactory to him personally as a quid pro quo for his selection rights have been long, persistent and, to date, fruitless.

 Nevertheless, we believe plaintiff is limited by law to accept the lands classified by the Secretary as available to him or to accept the equivalent value in money before January 1, 1975. Inherent in the exercise of the broad powers and manifold options granted the Secretary by the Taylor Grazing Act and the Classification and Multiple Use Act of 1964 to classify public lands for use and disposition is a consideration of the market value of the lands being classified. Consequently, regulations dealing with value and fixing value guidelines for the subordinate employees are reasonably and necessarily contemplated by laws requiring lands to be classified for disposition. Accordingly, we find nothing illegal or unreasonable in the regulations fixing a range of ten per cent above the minimum value established by the Act of August 31, 1964 as the maximum value limit for lands to be classified for disposition to satisfy soldiers' additional rights. Section 3 of the Act states: "The public lands so classified shall be of a value of not less than the average fair market value, determined by the Secretary as of the date patent issued, of those public lands actually conveyed in exchange for each type of claim since August 5, 1955." The determination of value is thus left to the Secretary and is unreviewable. The adoption by the Secretary of the date of the approval of the Act, i. e., August 31, 1964, as the cut-off date for the test transactions is one possible and reasonable interpretation of the law. In fact, the requirement that the lands involved in the base transactions from which the average fair market value is determined be valued as of the date of patent rather than the current value is an indication of Congressional intent that subsequent developments affecting value not be considered.

Congress required the Secretary to classify enough lands to provide plaintiff "a reasonable choice of public lands." Plaintiff avers as a conclusion of law that the Secretary has not done so. The only facts he relies on in support of the absence of a reasonable choice relate to his complaints about the Secretary's value standards. We have found these standards to be legally acceptable. If there is any other factual issue relating to whether a "reasonable choice of public lands" has been offered, it has not been pleaded, and averment of a conclusion of law cannot create a genuine issue of material fact.

Accordingly, defendants' Motion for Summary Judgment is granted.