Dessie M. HALL, and the First National Bank of Nevada, Executors of the Estate of S. J. Hall, Deceased, Plaintiffs,

v.

Walter J. HICKEL, Secretary of the Interior; Boyd Rasmussen; Robert E. Vaughan; Robert O. Buffington; Nolan F. Keil; and Rolla E. Chandler, Defendants.

Paul B. BRONKEN, Plaintiff,

v.

Walter J. HICKEL, Secretary of the Interior; Boyd Rasmussen; Robert E. Vaughan; Robert O. Buffington; Nolan F. Keil; and Rolla E. Chandler, Defendants.

Civ. Nos. R–2115, R–2012.

United States District Court
D. Nevada.

Oct. 15, 1969.

Bradley & Drendel, Reno, Nev., and Black, Kendall, Tremaine, Boothe & Higgins, Portland, Or., for plaintiffs.

Robert S. Linnell, U. S. Atty., and Julien G. Sourwine, Asst. U. S. Atty., Reno, Nev., for defendants.

## ORDER GRANTING SUMMARY JUDGMENT

THOMPSON, District Judge.

These two cases, while presenting some factual differences, have one issue in common. Each plaintiff complains of the refusal of the Secretary of the Interior to classify certain lands selected and designated by plaintiff-applicant as

being suitable for disposition in satisfaction of land selection rights known as Valentine Scrip owned by plaintiff. These rights to acquire title to public lands were created by Act of Congress (Act of April 5, 1872, 17 Stat. 649).

In each case, the decision declining to permit entry on the public lands was substantially identical:

"Based upon analyses of sales of similar land located nearby, the estimate of value of the parcel far exceeds the maximum value established by regulation for land to be classified for disposal in satisfaction of Valentine Scrip. The pertinent regulation (43 CFR 2221.07(f) Circular 2210 reads: 'Hereafter, no tract of land will be classified as suitable for disposition in satisfaction for claims if the value per acre of the tract exceeds the following * * * (2) For Valentine * * * selection claims $1400.'"

Defendants moved for summary judgment, lodged the administrative record with the Court, and asserted the absence of genuine issues of fact. Since 1934, the classification of public lands for disposition has been the all-important initial step in the processing of an application to obtain a patent to public lands under the non-mineral land laws. The character of the power exercised by the Secretary of the Interior in classifying public lands for disposition thus is a fundamental consideration.

The administrative records in these cases do not amount to much. The duty of land classification imposed on the Secretary of the Interior is performed ex parte, unimpeded and unaided by the crucible of cross-examination and the contradictory evidence expected in adversary contention. Hence, at the outset, the Court is faced with the assertion that review of the administrative action cannot be limited to the administrative record and that such review will be meaningless in the absence of additional evidence, in substance, a trial de novo. During the preliminary proceedings in these cases, in order to give some background of perspective to the arguments of the opposing forces, the Court permitted affidavits from plaintiffs and required responses thereto from officers of the Government, although there has not, as yet, been a ruling upon whether review is limited to the administrative record. From the record before the Court, it appears that if a trial de novo were permitted, the plaintiffs would produce testimony and exhibits in support of the contentions (1) that plaintiffs have been deprived of property without due process of law by administrative diminishment of the value of their scrip selection rights from $5,000 per acre to $1,270 per acre; (2) that Valentine Scrip applications filed before June 30, 1966 are required by law to be processed without regard to the value of the lands selected; (3) that all applicants for lands in enforcement of scrip rights have not been treated equally, i. e., some patents have issued without regard for the value of the land selected; (4) that from June 24, 1964, for a period of two years, all scrip applications were arbitrarily delayed by express direction of the Secretary to the local land offices not to classify or approve any scrip for patent; (5) that the Secretary's offering of public lands classified for scrip describes lands "ostensibly worth $1,270 per acre" which are not worth that much; (6) that the Government's valuation of the lands selected by plaintiffs was arbitrarily and unreasonably high; and (7) that plaintiffs have never been granted a hearing or the opportunity to present evidence or cross-examine opposing witnesses and there has been a total lack of administrative due process.

The broad spectrum of the attack leveled at the Secretary has led this Court to a consideration of the character of the power exercised by the Secretary in making the decisions which, as plaintiffs would have us believe, have so woefully wronged the plaintiffs even to alleged infringements of basic constitutional rights. Obviously, if a de novo trial is granted and plaintiffs' proposed issues are litigated, the Court will not

be "reviewing" final action of an administrative agency. On the contrary, the Court will be considering and determining for the first time the issues of fact which plaintiffs wish to litigate with the United States.

In the opinion of this Court, any jurisdiction it has of the controversy rests upon the provisions of the Administrative Procedure Act of 1946 (5 U.S.C. § 701 et seq., formerly 5 U.S.C. § 1009 et seq.). Thereunder a person suffering legal wrong because of agency action is entitled to judicial review thereof (5 U.S.C. § 702) in any applicable form of action in a court of competent jurisdiction (5 U.S.C. § 703) and to have the agency action set aside upon the grounds specified in section 706. An express initial exception to the jurisdiction of the Courts to review any agency action is found in section 701, as follows: "This chapter applies, according to the provisions thereof, except to the extent that (1) statutes preclude judicial review; or (2) agency action is committed to agency discretion by law." 5 U.S.C. § 701; 4 Davis "Administrative Law Treatise", § 28.08. In the instant cases, plaintiffs, attacking the refusal of the Secretary of the Interior to classify the specific lands selected by them as available for satisfaction of Valentine Scrip, are complaining of agency action which is committed to agency discretion by law and is unreviewable in the courts.

As early as 1879, Congress vested authority in an executive agency to classify public lands with respect to their mineral character (43 U.S.C. § 31(a) 20 Stat. 394), and in 1910, with the enactment of the "Picket Act" (43 U.S.C. § 141, 36 Stat. 847), codified a previously exercised and recognized presidential power to withdraw public lands from entry and disposition under the public land laws for other "public purposes" and expressly articulated "classification of lands" as an appropriate purpose. The major impact of the concept of classification of lands by the Executive Department of the Government did not occur, however, until the passage in 1934 of the Taylor Grazing Act (43 U.S.C. § 315 et seq., 48 Stat. 1272) as amended in 1936 (49 Stat. 1976), and the first general order of withdrawal (E.O. 6910, Nov. 26, 1934; 11 CFR 1938 Ed., p. 869).[1] Section 7 of the Act (43 U.S.C. § 315f) provides:

"The Secretary of the Interior is *hereby authorized, in his discretion,* to examine and classify any lands withdrawn or reserved by Executive order of November 26, 1934 (numbered 6910), and amendments thereto, and Executive order of February 5, 1935 (numbered 6964), or within a grazing district, which are more valuable or suitable for the production of agricultural crops than for the production of native grasses and forage plants, or more valuable or suitable for any other use than for the use provided for under this chapter, *or proper for acquisition in satisfaction* of any outstanding lien, exchange or *script* rights or land grant, and to open such lands to entry, selection, or location for disposal *in accordance with such classification* under applicable public-land laws, except that homestead entries shall not be allowed for tracts exceed-

---

[1]. "Subject to the conditions expressed in the Act of June 25, 1910 (36 Stat. 847), as amended by the Act of August 24, 1912 (37 Stat. 497; 43 U.S.C. §§ 141–143, 16 U.S.C. § 471), it is ordered that all of the vacant, unreserved and unappropriated public land in the States of Arizona, California, Colorado, Idaho, Montana, Nevada, New Mexico, North Dakota, Oregon, South Dakota, Utah, and Wyoming be, and it hereby is, temporarily withdrawn from settlement, location, sale, or entry and reserved for clas-

sification, and pending determination of the most useful purpose to which such land may be put in consideration of the provisions of the Act of June 28, 1934 (48 Stat. 1269; 43 U.S.C. §§ 315–315n, 1171), and for conservation and development of natural resources.

"The withdrawal hereby effected is subject to existing valid rights.

"This order shall continue in full force and effect unless and until revoked by the President or act of Congress."

ing three hundred and twenty acres in area. *Such lands shall not be subject to disposition, settlement, or occupation until after the same have been classified and opened to entry:* Provided, That locations and entries under the mining laws including sections 181–184, 185–188, 189–192, 193, 194, 201, 202–209, 211–214, 223, 224–226, 226–2, 227–229a, 241, 251, and 261–263 of Title 30, may be made upon such withdrawn and reserved areas without regard to classifications and without restrictions or limitations by any provision of this chapter. Where such lands are located within grazing districts reasonable notice shall be given by the Secretary of the Interior to any grazing permittee of such lands. The applicant, after his entry, selection, or location is allowed, shall be entitled to the possession and use of such lands: Provided, That *upon the application of any applicant* qualified to make entry, selection, or location, under the public-land laws, filed in the land office of the proper district, *the Secretary of the Interior shall cause any tract to be classified, and such application, if al-*

*lowed by the Secretary of the Interior, shall entitle the applicant to a preference right* to enter, select, or locate such lands if opened to entry as herein provided. June 28, 1939, c. 865, § 7, 48 Stat. 1272; June 26, 1936, c. 842, Title I, § 2, 49 Stat. 1976."

The italicized portions are deemed to have special significance for this case.

■ It is noted that section 7, supra, authorized classification of lands for acquisition in satisfaction of outstanding "script rights", such as the Valentine Scrip here involved. Congress has had more recent occasion to consider these rights which have been floating around as an inchoate claim against the public domain for almost a century. For example, in 1955, Congress passed a recordation statute (69 Stat. 534, quoted in note to 43 U.S.C. § 274) which, in substance outlawed scrip, lieu selection and similar rights not recorded within the time limited. Finally, on August 31, 1964, an Act was approved "To provide for the satisfaction of claims arising out of scrip, lieu selection, and similar rights" (78 Stat. 751).[2] The basic pur-

2. "That, except for military bounty land warrants, all claims and holdings recorded under the Act of August 5, 1955 (69 Stat. 534, 535) [set out as a note under this section], which are not satisfied in one of the ways hereafter set forth, shall become null and void on the later of the two following dates: (a) January 1, 1970, or, in the case of soldiers' additional homestead claims, January 1, 1975; (b) at the termination of any transaction initiated pursuant to this Act.

"Sec. 2. Prior to July 1, 1966, holders of claims recorded under the Act of August 5, 1955, may apply to the Secretary of the Interior to have conveyed to them, in satisfaction of their claims, such lands as they may, in their applications, designate. The Secretary shall thereafter convey the selected lands if he finds them to be proper, under existing law, for such disposition, and if the claim upon which an application is based is determined to be valid. As used in this Act, the terms 'lands' and 'land' include any rights or interests therein.

"Sec. 3. (a) Prior to January 1, 1967, the Secretary shall classify, for conveyance and exchange for each type of claim

recorded under the Act of August 5, 1955, public lands in sufficient quantity so as to provide each holder of such a claim with a reasonable choice of public lands against which to satisfy his claim. The public lands so classified shall be of a value of not less than the average fair market value, determined by the Secretary as of the date patent issued, of those public lands actually conveyed in exchange for each type of claim since August 5, 1955.

"(b) Holders of recorded claims may apply for reasonably compact areas of land so classified, and, upon his determination that the claim upon which an application is based is valid, the Secretary shall convey such lands to the applicant.

"Sec. 4. Prior to January 1, 1968, the Secretary shall, by registered mail or certified mail sent to the address of record of each person having an unsatisfied claim, offer in satisfaction of such claim lands of a value of not less than the average fair market value of those public lands actually conveyed in exchange for each type of claim since August 5, 1955. Fair market value shall be determined

pose of this law was to bring an end to these inchoate claims against the public domain and provide for an equitable method for satisfaction of the land selection rights, either by conveyance of land or payment of money.

At approximately the same time, the Congress passed the Public Land Admininstration Act (78 Stat. 982, 43 U.S.C. § 1391, et seq.) and the Classification and Multiple Use Act (78 Stat. 986, 43 U.S.C. § 1411 et seq.), which contemplate a thorough revision of the public land laws and, in the interim, increase authority in the Secretary regarding classification and disposition of public lands. Congress suggested the following considerations to influence the Secretary in his classification of lands:

"* * * (1) required for the orderly growth and development of a community or (2) are chiefly valuable for residential, commercial, agricultural (exclusive of lands chiefly valuable for grazing and raising forage crops), industrial, or public uses or development or (b) retained, at least during this period, in Federal ownership and managed for (1) domestic livestock grazing, (2) fish and wildlife development and utilization, (3) industrial development, (4) mineral production, (5) occupancy, (6) outdoor recreation, (7) timber production, (8) watershed protection, (9) wilderness preservation, or (10) preservation of public values that would be lost if the land passed from Federal ownership." 43 U.S.C. § 1411.

Even before the Classification and Multiple Use Act of 1964, the Secretary had broad discretion in the classification of public lands. As a partial list of the options open: A Taylor Grazing Act Section 8 exchange (43 U.S.C. § 315g) "when public interests will be benefited thereby"; a public sale in his discretion (43 U.S.C. § 1171); a lease or sale as a small tract "in his discretion" (43 U.S.C. § 682a); a lease or sale for recreation or other public purposes "in the exercise of his discretion" (43 U.S.C. § 869).

▮ All the foregoing is, of course, preamble to a consideration of whether the Secretary's authority to classify lands prior to entry and disposition represents agency action committed to agency discretion by law which the courts may not review. The difficulties inherent in this inquiry are spelled out in Volume 4 of Davis' "Administrative Law Treatise" in his discussion of unre-

---

in the manner prescribed in section 3 of this Act. Upon acceptance of the offer, the Secretary shall convey the lands to the claimant, if he determines that the claim is valid.

"Sec. 5. In respect of any type of claim recorded under the Act of August 5, 1955, not more than three conveyances of public lands in exchange for which have taken place since that date, the Secretary shall determine the type of claim which it most nearly resembles, and at least four conveyances in exchange for which has taken place since August 5, 1955, and shall, for the purposes of this Act, treat it in all respects as if it were such type of claim.

"Sec. 6. Prior to January 1, 1970, or, in the case of soldiers' additional homestead claims, January 1, 1975, any person who has a claim recorded pursuant to the Act of August 5, 1955, by written notice to the Secretary of the Interior, or any officer of the Department of the Interior to whom authority to receive such notice may be delegated, may elect to receive cash instead of public land in satisfaction of his claim, at a rate per acre equal to the average value of the lands offered by the Secretary under section 4 of this Act. Upon a determination that the claim is valid, the Secretary or his delegate shall certify the claim to the Secretary of the Treasury who is authorized and directed to pay the claim out of any money in the Treasury not otherwise appropriated. Acceptance of the money shall constitute a full and complete satisfaction of the claim or holding for which the money is paid: Provided, That no agent or attorney acting on behalf of another to procure a payment under this Act shall demand, accept, or receive more than 10 per centum of the payment made, and any agreement to the contrary shall be null and void."

viewable action. No single test is available to distinguish between agency action which is reviewable or which is non-reviewable or to determine the scope of review. It is possible to summarize the principal factors and case authorities which are persuasive to the conclusion that the discretion exercised by the Secretary of the Interior in these cases in classifying the lands selected by plaintiffs as unavailable for satisfaction of their Valentine Scrip rights is not reviewable.

Probably the most direct precedent is Ferry v. Udall, 9th Cir. 1964, 336 F.2d 706, a decision praised by Professor Davis in his supplement to Chapter 28 of his treatise. There the Court clearly distinguished between agency action which merely "involves discretion" and agency action "committed to agency discretion", and concluded that the Secretary's decision not to accept any offer for purchase of public lands offered for sale under the Isolated Tracts Act was unreviewable. This was because "Under this Act, Congress has left entirely to the Secretary's discretion whether to dispose of the land or not." The statute did not make it "mandatory for the Secretary to transfer the land to those who complied with the statutory requirements." Cf. United States ex rel. McLennan v. Wilbur, 1931, 283 U.S. 414, 51 S.Ct. 502, 75 L.Ed. 1148.

A more ancient precedent in this Court is Sellas v. Kirk, 9th Cir. 1953, 200 F.2d 217, affirming 101 F.Supp. 237 in which both the district court and the court of appeals held that a rule established by the Secretary concerning classification of base properties between control of water and ownership of land under the Taylor Grazing Act was agency action committed by law to agency discretion and unreviewable.

This year, in Hopkins v. United States, 9th Cir. 1969, 414 F.2d 464, the Ninth Circuit expressly recognized the pervasive effect of the Taylor Grazing Act, which "changed existing law by conditioning entry and settlement upon the Secretary's prior classification of the lands as suitable." [3]

Similarly, in Carl v. Udall, 1962, 114 U.S.App.D.C. 33, 309 F.2d 653, in reviewing the rejection by the Secretary of an application for public lands to satisfy lieu selection rights granted by Congress, which are similar to Valentine Scrip rights, the Court held that the rights were not to the particular lands selected by the applicant and that the Secretary had the discretion to defeat the entry of the particular lands selected by classifying them as "lands which in the public interest should be retained in public ownership." (This was under the Taylor Grazing Act and before passage of the Classification and Multiple Use Act of 1964 which expressly acknowledges such broad powers in the Secretary.)

3. Hopkins v. United States and Finch v. United States, 10th Cir. 1967, 387 F.2d 13, are not apposite on the question of the reviewability of the Secretary's classification. Both cases involved Indian homestead applications under the General Allotment Act which expressly provides for Court action to enforce the right to an allotment (25 U.S.C. § 345). That is to say, the Court was not reviewing final agency action by authority of the Administrative Procedure Act with its provision excepting agency action committed to agency discretion by law. The Hopkins opinion expressly recognized the distinction:

"25 U.S.C. § 345 and 28 U.S.C. § 1353 give district courts original jurisdiction of actions involving the right to an allotment under the General Allotment Act. Poafpybitty v. Skelly Oil Co., 390 U.S. 365, 368 n. 5, [88 S.Ct. 982, 19 L.Ed.2d 1238] (1968); Arenas v. United States, 322 U.S. 419, 429–430 [64 S.Ct. 1090, 88 L.Ed. 1363] (1944); United States v. Payne, 264 U.S. 446 [44 S.Ct. 352, 68 L.Ed. 782] (1924); Wise v. United States, 297 F.2d 822, 823 (10th Cir. 1951). Plaintiffs' contention that the Secretary exceeded the powers conferred upon him by the governing statutes is subject to judicial review in such a suit. Arenas v. United States, supra, [322 U.S.] at 432, 64 S.Ct. 1090; Wise v. United States, supra, 297 F.2d at 823."

While not relying expressly upon the unreviewability of agency action committed by law to agency discretion, the Ninth Circuit assumed it sub silentio in Pease v. Udall, 9th Cir. 1964, 332 F.2d 62, saying: "The initial difficulty with appellant's position—*and which we find dispositive*—(emphasis added) is that the Mineral Leasing Act has consistently been construed as leaving to the Secretary, within his discretion, a determination as to what lands are to be leased thereunder. Haley v. Seaton, 1960 [108 U.S.App.D.C. 257], 281 F.2d 620, 623–626."

The exact problem before us has been considered by the District of Oregon in Linn Land Company v. Udall, 1966, D.C., 255 F.Supp. 382, and Shaw v. Udall, 1967, D.C., 264 F.Supp. 390. Both cases involved an effort to review the Secretary's refusal to classify lands as available for entry in satisfaction of scrip rights. In the *Linn Land Company* case, Judge Kilkenny said: "I have grave doubts as to the court's jurisdiction to review the power of the Secretary to classify the lands pursuant to the legislation and the Executive Order." This concern was reiterated in the Shaw opinion.[4]

Hamel v. Nelson, N.D.Cal.1963, 226 F.Supp. 96, is a case in which Judge MacBride forthrightly denied judicial review of the Secretary's refusal to issue a patent under 43 U.S.C. § 1068 because he had discretion to do so or not, a discretion which had been committed to him by law.

So much for the primary public lands decisions in this area. Reviewing them and the applicable statutes, with recent amendments and additions which have broadened the Secretary's powers in the field of classification of public lands, I am impressed with the relevancy of the reasoning of the Supreme Court in Panama Canal Co. v. Grace Line, Inc., 1958, 356 U.S. 309, 78 S.Ct. 752, 2 L.Ed. 2d 788, in which the Court said:

"Section 10 of the Administrative Procedure Act, 60 Stat. 243, 5 U.S.C. § 1009, 5 U.S.C.A. § 1009, excludes from the categories of cases subject to judicial review 'agency action' that is 'by law committed to agency discretion.' We think the intitiation of a proceeding for readjustment of the to tolls of the Panama Canal is a matter that Congress has left to the discretion of the Panama Canal Co. Petitioner is, as we have seen, an agent or spokesman of the President in these matters. It is 'authorized' to prescribe tolls and to change them. Canal Zone Code, Tit. 2, § 411. But the exercise of that authority is far more than the performance of a ministerial act. As we have seen, the present conflict rages over questions that at heart involve problems of statutory construction and cost accounting: whether an

---

4. "Defendant takes the position that the classification for disposal of parcels of the public domain, for which plaintiff made application, is a matter committed by law to agency discretion, and thus, exempted from judicial review. Moreover, the Secretary argues that this action is, in fact, against the United States and since the Government has not consented to be sued, the action should be dismissed for want of an indispensable party. The precise jurisdictional issue on the right of this Court to review the decision of the Secretary was before me in Linn Land Co. v. Udall, 255 F.Supp. 382 (D.Or.1966), in which I expressed grave doubts as to the Court's jurisdiction to review the action of the Secretary in classifying the lands. I remain of the same belief. The Ninth Circuit decisions in Adams v. Witmer, 271 F.2d 29 (9th Cir. 1959) and Coleman v. United States, 363 F.2d 190 (9th Cir. 1966), cited by plaintiff, relate to mining claims. Such cases involve property rights 'in the fullest sense' in specific property, rather than the 'floating' scrip rights of plaintiff. More closely in point are Pease v. Udall, 332 F.2d 62 (9th Cir. 1964); Thor-Westcliffe Development, Inc. v. Udall, 114 U.S.App.D.C. 252, 314 F.2d 257 (1963); and Haley v. Seaton, 108 U.S.App.D.C. 257, 281 F.2d 620 (1960). Although these cases grew out of the Mineral Leasing Act, the Secretary's discretionary powers are almost identical with those he possesses under the Taylor Grazing Act."

operating deficit in the auxiliary or supporting activities is a legitimate cost in maintaining and operating the Canal for purpose of the toll formula. These are matters on which experts may disagree; they involve nice issues of judgment and choice, State of New York v. United States, 331 U.S. 284, 335, [67 S.Ct 1207, 1234, 91 L.Ed. 1492], which require the exercise of informed discretion. Cf. United States ex rel. McLennan v. Wilbur, 283 U.S. 414 [51 S.Ct. 502, 75 L.Ed. 1148]; Interstate Commerce Commission v. United States of America ex rel. Humboldt S. S. Co., 224 U.S. 474, 484–485 [32 S.Ct. 556, 559, 56 L.Ed. 849]. The case is, therefore, quite unlike the situation where a statute creates a duty to act and an equity court is asked to compel the agency to take the prescribed action. Cf. Virginian R. Co. v. System Federation, 300 U.S. 515, 551 [57 S.Ct. 592, 601, 81 L.Ed. 789]; Kansas City So. R. Co. v. Interstate Commerce Commission, 252 U.S. 178 [40 S.Ct. 187, 64 L.Ed. 517]. We put the matter that way since the relief sought in this action is to compel petitioner to fix new tolls. The principle at stake is no different than if mandamus were sought—a remedy long restricted, Maybury v. Madison, 1 Cranch 137, 166 [2 L.Ed. 60]; Decatur v. Paulding, 14 Pet. 497, 514–517 [10 L.Ed. 559], in the main, to situations where ministerial duties of a nondiscretionary nature are involved. Where the matter is peradventure clear, where the agency is clearly derelict in failing to act, where the inaction or action turns on a mistake of law, then judicial relief is often available. Harmon v. Brucker, 355 U.S. 579 [78 S.Ct. 433, 2 L.Ed.2d 503], is a recent example. There the Secretary of the Army issued less than 'honorable' discharges to soldiers, based on their activities prior to induction. The Court held that the 'records,' prescribed by Congress as the basis for his action, were only records of military service. But where the duty to act turns on matters of doubtful or highly debatable inference from large or loose statutory terms, the very construction of the statute is a distinct and profound exercise of discretion. See Work v. United States ex rel. Rives, 267 U.S. 175, 183 [45 S.Ct. 252, 254, 69 L.Ed. 561]; Wilbur v. United States ex rel. Kadrie, 281 U.S. 206, 219 [50 S.Ct. 320, 324, 74 L.Ed. 809]; United States ex rel. Chicago Great Western R. Co. v. Interstate Commerce Commission, 294 U.S. 50, 62–63 [55 S. Ct. 326, 331, 79 L.Ed. 752]. We then must infer that the decision to act or not to act is left to the expertise of the agency burdened with the responsibility for decision.

"We think this case is in that area. The petitioner, as agent of the President, is given questions of judgment requiring close analysis and nice choices. Petitioner is not only agent for the President but a creature of Congress. It is on close terms with its committees, reporting to the Congress, airing its problems before them, looking to Congress for guidance and direction. It is at least arguable that Congress to date has sided with petitioner and against the Comptroller General in construing §§ 411 and 412 of the Code. For Congress, fully advised of the Comptroller General's views, in his Report for 1954, approved the budgets for the Panama Canal Co. for 1956, 1957, and 1958, based on petitioner's interpretation of the statute and its methods of accounting and cost allocation, 69 Stat. 235–237, 70 Stat. 322–324, 71 Stat. 78. That does not necessarily mean that the construction of the Act, pressed on us and on Congress by petitioner, is the correct one. It does, however, indicate that the question is so wide open and at large as to be left at this stage to agency discretion. The matter should be far less cloudy, much more clear for courts to intrude."

■ In the classification of lands, the exercise of the authority granted by Congress is far more than the perform-

ance of a ministerial act. It is a matter on which experts may disagree involving nice issues of judgment and choice which requires the exercise of an informed discretion. True, there are two statutes which impose a duty to act on the Secretary, first, the Taylor Grazing Act ("* * * upon the application of any applicant * * * the Secretary of Interior shall cause any tract to be classified * * *" 43 U.S.C. § 315f) and the Act of August 31, 1964 (78 Stat. 751) ("* * * the Secretary shall classify for conveyance and exchange for each type of claim recorded under the Act of August 5, 1955 public lands in sufficient quantity so as to provide each holder of such a claim with a reasonable choice * *."). Performance of these statutory duties to classify may, of course, be compelled by the courts. Udall v. Taunah, 10th Cir. 1968, 398 F.2d 795; Richardson v. Udall, D.C.Ida.1966, 253 F. Supp. 72. And if this were all that is involved, we might view the Panama Canal Co. case as authorizing judicial review. But Ferry v. Udall, *supra,* teaches that this is not so, as does Lewis v. Udall, 9th Cir. 1967, 374 F.2d 180. Both cases involved applications under 43 U.S.C. § 1171. Such applications may be, and frequently are, initiated by the proposed entryman, who, by his application, brings into operation the mandatory requirement of the Taylor Grazing Act that the Secretary "shall cause any tract to be classified." 43 CFR 2243.0–1, et seq., the regulations as of January 1, 1969, which are not materially different from preceding regulations. So, it is not the duty to classify which is important here. It is the broad administrative discretion to classify or not to classify for a particular purpose or particular kind of disposition. The judiciary simply cannot supervise the considerations of public benefit, value, multiple use and private advantage which are inherent in the broad choices Congress has made available to the Secretary. Since the Taylor Grazing Act and the President's withdrawal Orders of the early 1930's, Congessional policy has been clear. A non-

mineral entry on withdrawn lands cannot be made and an incipient entryman acquires no enforceable rights in a particular tract selected by him until that tract has been classified by the Secretary as appropriate for the particular kind of disposition proposed. Hopkins v. United States, *supra.*

Another factor which reinforces our conclusion that the Secretary's classification action is not reviewable is the state of the record which is sought to be reviewed. Since the initial regulations promulgated after enactment of the Taylor Grazing Act (43 C.F.R., First Edition, 296.7), the classification of lands has been interpreted by the Secretary to be discretionary action taken in a non-advisory proceeding. Accordingly, current regulations (43 CFR 2411.1–1, et seq., revised as of January 1, 1969) and their predecessors provided only for protests of the initial classfication decision and administrative review thereof, supervisory in character, in ex parte non-adversary proceedings. Such a protest is to be distinguished from a contest proceeding in the land office (43 CFR 1852.1, et seq.) where pleadings are filed, evidentiary hearings held, adversary in character, and formal appeals allowed through the administrative heirarchy to the Secretary himself. While it may be possible to point to anachronistic examples in the regulations, generally speaking the contest procedure in the land office regulations has governed disputes in which enforceable private rights to the use, occupancy or title to public lands are asserted as against the Government under the public land laws (Cf. Stewart v. Penny, 1965, D.C., 238 F.Supp. 821) or against competing private claimants to the same lands. By contrast, the protest procedure in the land office regulations has applied to situations where the adjudication of specific rights is not involved, but the supplication is directed to the discretion of the Secretary and his subordinates. Accordingly, when provision for protest is made, no formal pleadings are required, an adversary hearing is not contemplated and the so-called "appeal"

invokes the supervisory authority of the Secretary over the discretionary acts of his subordinates and not the review of a formal record.

This situation is persuasive against judicial review of a classification action because it is indicative of the Secretary's interpretation of the laws that in classifying lands, he is exercising a discretion which has been committed to him by law. In addition, it leaves us with nothing to review, that is to say, there is nothing before the Court to support an informed judgment as to whether the standards of proper administrative action have been met as prescribed in the Administrative Procedure Act (5 U.S.C. § 706). Inasmuch as the only basis for review of the decisions adverse to these plaintiffs is under the Administrative Procedure Act, we are confronted with the principle that the Court is restricted to the administrative record. A trial de novo is impermissible. Dredge Corporation v. Penny, 9th Cir. 1964, 338 F.2d 456; Adams v. United States, 9th Cir. 1963, 318 F.2d 861. The only escape from this dilemma, as I see it, is to conclude that the protest procedure prescribed by the regulations is unconstitutional and violates due process of law and that a more formal and adversary contest procedure is required in processing a petition for classification of lands. Such a conclusion would necessarily be predicated upon the concept that an application for entry on the public lands and the accompanying petition for classification preliminary to allowance of entry vests in the applicant a litigable right to the specific lands selected by him. This is not only contrary to the specific holding of Carl v. Udall, *supra,* which is highly persuasive in its reasoning, but is also entirely inconsistent with the development of the public land laws in the twentieth century, commencing with the Picket Act of 1910 through the Taylor Grazing Act of 1934, to the Classification and Multiple Use of Act of 1964. Congressional intent obviously requires preliminary classification by the Secretary as a condition precedent to the acquisi-

tion by a non-mineral entryman of litigable rights to a selected portion of the public domain. Cf. Dredge Corporation v. Penny, 9th Cir. 1966, 362 F.2d 889.

Accordingly, the Government's Motion for Summary Judgment is granted.